In the Matter of COMPAGNIE GENERALE TRANSATLANTIQUE, Respondent, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Appellant.

Argued October 25, 1938; decided November 29, 1938.

*William C. Chanler, Corporation Counsel* (*Sol Charles Levine, Edmund B. Hennefeld* and *Jerome R. Hellerstein* of counsel), for appellant. A general tax levied alike upon all persons who purchase and acquire within the State goods sold at retail does not violate the commerce clause of the Federal Constitution when applied alike to purchases of goods stored within and without the State at the time of purchase. (*Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169.) The tax at bar must be upheld. (*Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169; *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86; *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *Banker Bros. Co.* v. *Pennsylvania,* 222 U. S. 210; *Matter of McNeel Marble Co.* v. *Graves,* 247 App. Div. 242; 275 N. Y. 601; *Alpha Portland Cement Co.* v. *Massachusetts,* 268 U. S. 203; *Case of State Freight Tax,* 15 Wall. 232; *Fargo* v. *Michigan,* 121 U. S. 230; *Minnesota* v. *Blasius,* 290 U. S. 1; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250.) Taxes upon local activities may be measured by receipts from sales of goods shipped across State lines. (*American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250.) Since the subject of the tax is a purchase which is local to New York city alone, there is no possibility of multiple taxation, (*Mona-*

*motor Oil Co.* v. *Johnson,* 292 U. S. 86; *Henneford* v. *Mason Co.,* 300 U. S. 577; *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.,* 303 U. S. 604.) There is no possibility of multiple taxation since the tax is borne by the purchaser, who is subject to tax in no other State. (*James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Helvering* v. *Mountain Producers Corp.,* 303 U. S. 376; *Helvering* v. *Gerhardt,* 304 U. S. 405; *Matter of Leavy,* 85 Fed. Rep. [2d] 25.

*Herbert K. Stockton* for respondent. The imposition of the sales tax upon the transactions is in violation of the United States Constitution because it is a direct burden upon interstate commerce. The sales and deliveries are transactions in interstate commerce. (*Oklahoma* v. *Kansas Natural Gas Co.,* 221 U. S. 229; *Welton* v. *Missouri,* 91 U. S. 275; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282; *Kidd* v. *Pearson,* 128 U. S. 1; *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211; *Lemke* v. *Farmers Grain Co.,* 258 U. S. 50; *American Express Co.* v. *Iowa,* 196 U. S. 133; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506; *Matter of McNeel Marble Co.* v. *Graves,* 247 App. Div. 242; *Western Union Tel. Co.* v. *Foster,* 247 U. S. 105; *Federal Trade Comm.* v. *Pacific States Paper Trade Assn.,* 273 U. S. 52.) The city of New York is without power to burden interstate commerce by imposing a tax on the interstate sales. (*Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Lyng* v. *Michigan,* 135 U. S. 161; *Kansas City Ry. Co.* v. *Kansas,* 240 U. S. 227; *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555; *Helson & Randolph* v. *Kentucky,* 279 U. S. 245; *Minnesota* v. *Blasius,* 290 U. S. 1; *Spalding & Bros.* v. *Edwards,* 262 U. S. 66; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450; *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292; *Pollock* v. *Farmers Loan & Trust Co.,* 157 U. S. 429; *Patton* v. *Brady,* 184

U. S. 608; *Matter of National Cash Register Co. v. Taylor,* 276 N. Y. 208; 303 U. S. 656.) The sales tax is not a tax upon the purchaser nor upon the seller, but upon the transaction of sale. (*Panhandle Oil Co. v. Knox,* 277 U. S. 218; *Indian Motorcycle Co. v. United States,* 283 U. S. 570; *Robbins v. Shelby Taxing District,* 120 U. S. 489; *Dahnke-Walker Milling Co. v. Bondurant,* 257 U. S. 282; *Matter of McNeel Marble Co. v. Graves,* 247 App. Div. 242.)

*H. Maurice Fridlund* and *James R. Roberts* for Kirlin, Campbell, Hickox, Keating & McGrann, *amici curiæ.* The sales involved were transactions in interstate commerce. (*Oklahoma v. Kansas Natural Gas Co.,* 221 U. S. 229; *Western Oil Refining Co. v. Lipscomb,* 244 U. S. 346; *Welton v. Missouri,* 91 U. S. 275; *Rearick v. Pennsylvania,* 203 U. S. 507; *Dahnke-Walker Milling Co. v. Bondurant,* 257 U. S. 282; *Kidd v. Pearson,* 128 U. S. 1; *Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211; *Lemke v. Farmers Grain Co.,* 258 U. S. 50; *American Express Co. v. Iowa,* 196 U. S. 133; *Sonneborn Bros. v. Cureton,* 262 U. S. 506; *McCall v. California,* 136 U. S. 104; *Federal Trade Comm. v. Pacific States Paper Trade Assn.,* 273 U. S. 52; *Cleveland Refining Co. v. Phipps,* 277 Fed. Rep. 463; 261 U. S. 449; *Matter of McNeel Marble Co. v. Graves,* 247 App. Div. 242; 275 N. Y. 601; *Western Union Tel. Co. v. Foster,* 247 U. S. 105.) The sales tax would lay a direct burden upon interstate commerce. (*Lyng v. Michigan,* 135 U. S. 161; *Kansas City Ry. Co. v. Kansas,* 240 U. S. 227; *Ozark Pipe Line v. Monier,* 266 U. S. 555; *Helson & Randolph v. Kentucky,* 279 U. S. 245; *Anglo-Chilean Nitrate Corp. v. Alabama,* 288 U. S. 218; *Spalding & Bros. v. Edwards,* 262 U. S. 66; *American Mfg. Co. v. St. Louis,* 250 U. S. 459; *Cudahy Packing Co. v. Minnesota,* 246 U. S. 450; *Crew Levick Co. v. Pennsylvania,* 245 U. S. 292; *Pollock v. Farmers Loan & Trust Co.,* 157 U. S. 429; *Patton v. Brady,* 184 U. S. 608.) The tax

assessed against petitioner is invalid. (*Matter of National Cash Register Co.* v. *Taylor,* 276 N. Y. 208; 303 U. S. 656; *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63; *People ex rel. Astor Trust Co.* v. *State Tax Comm.,* 174 App. Div. 320; *Matter of West Pub. Co.* v. *Taylor,* 276 N. Y. 535; 303 U. S. 656.)

CRANE, Ch. J. This appeal involves the same question as that presented in its companion case, *Matter of Sears, Roebuck & Co.* v. *McGoldrick* (279 N. Y. 184). Should the principles there stated lead to a different result on the facts in this case?

The Standard Oil Company, having numerous oil tanks in New Jersey, by New York contract sold and delivered oil to the respondent's steamships at its piers in New York city. A tax upon these sales for the period from December 10, 1934, to December 31, 1935, has been set aside below, as an illegal burden upon interstate commerce. The only distinction upon the facts in this case and those in the *Sears, Roebuck & Co.* case rests in the nature of the respondent's business. The respondent buys two classes of oil for steamships — fuel oil, and Diesel fuel oil. In the briefs these are referred to as " Standard Bunker Fuel Oil " and " Standard Diesel Fuel Oil." The storage tanks containing large quantities of these oils are at Bayonne, New Jersey.

The contract for the period in question for fuel oil is contained in a letter accepting an offer to extend a previous fuel oil contract until December 31, 1936. It states that the Standard Oil Company of New Jersey is to supply the total fuel oil requirements at New York of all the oil-burning vessels of the Compagnie Generale Transatlantique during the period of the contract up to a maximum of four million barrels per year. The maximum price is fixed at $1.10 per barrel, with provision for increases. The contract for the Diesel fuel was also made at New York for a period up to December 31, 1935,

not to exceed fifteen thousand barrels in any one month, and up to, but not exceeding, one hundred thousand barrels during the term of one year. Delivery shall be made by barge provided by the seller to the buyer's vessel at dock within the harbor limits at New York, or to the buyer's vessel alongside dock of seller at New York. The price varies according to the place of delivery.

These two companies have been doing business for many years, and it was well understood that the oil of the Standard Oil Company of New Jersey was stored in thousands of tanks in Bayonne, New Jersey. So far as this record shows, it had no storage facilities in New York city. As the *Normandie* or the *Paris* or the *Champlain* or the *Lafayette* approached the harbor in New York, messages were sent to the Standard Oil Company's office in New York city indicating the amount of fuel that would be necessary, and with the docking of the steamer at the steamship company's pier, barges of the oil company would soon be alongside prepared to pump the oil into the steamer's tanks. The oil was brought from New Jersey by the oil company's barges. Both the Standard Oil Company of New Jersey and the Compagnie Generale Transatlantique were doing business in the city of New York. The latter had its piers and office at the foot of Fiftieth street, and places of business at 19 State street and 610 Fifth avenue, Manhattan. The offices of the Standard Oil Company of New Jersey were at 26 Broadway, New York city.

Unless there be some material difference between the sales in this case and those in the *Sears, Roebuck* case, we shall be obliged to sustain the tax. What difference do we find? In the first place, the Standard Oil Company of New Jersey maintains a large number of oil tanks in Bayonne, New Jersey, and the vicinity. The steamship company knew that the nature of the business required oil to be stored in large quantities, and that the oil company had such a plant, and delivered its oil

by drawing it off from these tanks into ships at Bayonne, or else into barges, to be carried to vessels at the port of New York and elsewhere. While the purchase or the contract of sale was made in New York, it was with a view of getting this specific oil, the product of the Standard Oil Company of New Jersey, from its plant and tanks in New Jersey. The product in New Jersey, kept there in tanks, was the thing bargained for. So far as the record in this case goes, the contract centers around the purchase of the New Jersey oil of the kind and quantity specified. The delivery at the Port of New York was made necessary because of the draft of the steamers. The cost of transportation from Bayonne to the port of New York increased the price.

In the *Sears, Roebuck* case the purchaser bought an article in New York according to sample. As long as he got what he ordered, it was indifferent to him where it came from. The merchandise was very largely stock goods and kept for the convenience of the seller at various depots throughout the State. The ease with which the tax could be evaded by such class of merchandise being stored without the State and sold in New York city by sample, was a matter worthy of consideration, as bearing upon competition with New York goods.

Here, on the other hand, there is a special product of the Standard Oil Company of New Jersey which has to be kept in great receptacles built for the purpose which we can treat by analogy as a manufacturing plant. It is the articles of this plant in New Jersey which the purchaser seeks. At the office of the seller in New York it bargains for this oil to be put in its ships. We think, under the principles stated in the *Sears, Roebuck* case and the authorities there cited, that this is a contract for interstate shipments, and that the tax upon such a sale is a direct tax upon interstate commerce.

The order should be affirmed, with costs.

FINCH, J. (dissenting). The contract involved in the case at bar admittedly was made in New York for delivery in New York of a standard kind of oil procurable in the open market in New York or elsewhere, at an open market price. While customarily coming from New Jersey, it is admitted that in some instances the seller has resold oil which, pursuant to its rights under the contract, it had purchased in New York. When sold and delivered in this State, the fact that it may be used thereafter in foreign commerce does not prevent it from being taxable as a sale here. (*Edelman* v. *Boeing Air Transport, Inc.,* 289 U. S. 249.) In addition, since no burden is laid on interstate commerce as such, and no other or different burden than if deliveries had been made by intrastate transportation in New York, the tax is a non-discriminatory one and cannot in any view constitute an undue burden on interstate commerce. (*Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169.)

The order appealed from should be reversed and the determination of the Comptroller reinstated.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur with CRANE, Ch. J.; FINCH, J., dissents in opinion.

Order affirmed.