In the Matter of JAGELS " A FUEL CORPORATION," Petitioner, for an Order against FRANK J. TAYLOR, Comptroller of the City of New York, Respondent.

Present — Martin, P. J., O'Malley, Townley, Dore and Cohn, JJ.; Martin, P. J., dissents; dissenting opinion by Martin, P. J.

MARTIN, P. J. (dissenting). Pursuant to the provisions of Local Law No. 20 of 1934, the comptroller of the city of New York has made a determination assessing a tax on certain sales made by the petitioner. Jagels "A Fuel Corporation," the petitioner, is a corporation organized under the laws of Delaware, engaged in the business of selling coal at retail to consumers in New York city. Its principal place of business is at 77 River street, Hoboken, N. J., and it maintains coal yards in New Jersey. It is authorized to do business in the State of New York and maintains a sales office in the Flatiron Building in New York city and has never had a coal yard in New York. The principal business calls for delivery in the centrally located section of New York city, but, should a customer want to give business outside this territory, petitioner has delivery made for its account from yards of associated dealers located within the city. The tax has been paid on deliveries from yards within the city, and such transactions are not involved here.

The sales about which the controversy has arisen, and upon which a tax has been assessed, fall within three classes: In the first are orders received by telephone at the New York office; the New York office then telephones to the New Jersey office where, upon credit approval, the order is accepted and delivery is made to the consumer in New York from a New Jersey yard. This first class, it is estimated, constitutes about seventy-five per cent of the petitioner's business. In the second class, the order is telephoned direct to New Jersey by the customer, and this is followed by a confirmatory written order and delivery is made from the New Jersey yard to the consumer in New York. In the third place, a written order is sent by the purchaser in New York to the New Jersey office and delivery is made from the New Jersey yard to the consumer in New York. In all three classes the customer is billed from the New Jersey office and payment is made to that office, it appearing that no salesman in New York has the right to collect from customers in New York.

The product which the petitioner sells is standard coal, having no special qualities or character. The same kind of coal sold by the petitioner is sold by a large number of dealers whose yards are in the city of New York.

On behalf of the city it is contended that the city sales tax, as applied to these transactions, does not constitute an undue burden on interstate commerce, the merchandise being a stock product, and petitioner being free to effect performance by shipment from any source, and the out-of-State storage and shipment being purely matters for petitioner's own convenience. The petitioner urges, however, that the tax is imposed upon transactions in interstate commerce upon which the city is without power to tax.

In *Matter of National Cash Register Co.* v. *Taylor* (276 N. Y. 208) the Court of Appeals said: "The power of the State of New York to tax receipts derived from transactions in interstate commerce is limited by the provisions of the Constitution of the United States. The power of the city of New York to tax receipts

from sales is conferred upon it by statute (Laws of 1934, ch. 873). The power so conferred cannot transcend the limitations imposed upon the power of the State by the Constitution of the United States, and it is restricted further by limitations imposed by the State in the enabling act. That act provides expressly that it does not ' authorize the imposition of a tax on any transaction originating and/or consummated outside the territorial limits of any such city, notwithstanding that some act be necessarily performed with respect to such transaction within such limits.' (§ 1.) "

In that case it appeared that the petitioner kept in the city of New York a stock of " standard " machines manufactured by it in Ohio, and it paid the tax upon sales where delivery was made from its stock of " standard " machines. It also appeared that, where an order was received for a machine which deviated in any way from the " standard " machines held in stock in New York, it was classed as a " special order;" such order was sent by the petitioner in New York and was expressly made " subject to acceptance by the company at Dayton, Ohio." The order was forwarded from New York to Ohio; the machine was manufactured and assembled there and then shipped to New York. In holding that the city was without power to tax the proceeds of the " special order," the court pointed out: " A tax imposed by the State on the sale of goods produced here and goods imported from other States is valid. However, the goods delivered under a ' special order ' were not within the State when the order was given. The contract of sale did not become effective until the order given in New York was accepted in Ohio; the goods sold were manufactured in Ohio; they were appropriated to the contract of manufacture or sale in Ohio; they were never held here at the pleasure of the seller for disposal or use; they were sent to the office here of the seller only for delivery to the buyer and as a convenient step in the transportation from the factory of the seller outside the State to the buyer here."

It is urged that the holding in the *National Cash Register* case is inapplicable to a situation such as the one now under review where the merchandise is standard, obtainable from a variety of sources within and without the State, and where no formal contract is entered into, but the retail customer merely communicated to petitioner that, if coal is delivered to him the same day in the desired quantity, he will pay a specified price for it. The answer to that argument is found in the recent decision of the Court of Appeals in *Matter of Compagnie Generale Transatlantique* v. *McGoldrick* (279 N. Y. 192). There the contract was made in the city of New York for delivery to vessels at the port of New York of oil from tanks in New Jersey. The dissenting opinion pointed out that the contract called for delivery in New York of a standard kind of oil procurable in the open market in New Jersey or elsewhere at open market prices, and that, while customarily coming from New Jersey, in some instances the seller had resold oil which it had purchased in New York. The court, however, held the transactions free from tax, construing the contract to apply to a special product of the oil company which had to be kept in great receptacles built for the purpose, which the court treated by analogy as a manufacturing plant, and the court said that it was the articles of this plant in New Jersey which the purchaser sought.

*Matter of Sears, Roebuck & Co.* v. *McGoldrick* (279 N. Y. 184) is cited by the city as being precisely in point. There the practice was for the customer to enter one of the petitioner's retail stores in New York and order certain merchandise

according to the sample displayed. The customer was informed that the merchandise was not kept in stock but had to be ordered from a warehouse outside of the State, and, with this information, his order was taken. The Court of Appeals said: "When the purchaser entered one of the defendant's stores and made a contract to buy certain merchandise, according to the sample displayed, his purpose and object were to procure the article, irrespective of the place from which it was delivered. It made no difference to him whether it came from Philadelphia, Port Newark or Boston, as long as he got it on time and in good condition. The delivery from the warehouses of the appellant outside the State was a matter of convenience or economy in the methods of conducting the appellant's business. It cannot be said that the shipments out of the State were one of the important features of the contract. It was incidental to the contract, the obligation of the defendant being to deliver the article purchased. From where it should come was a matter of its choice."

On the facts in this case, until the petitioner in New Jersey passed on the credit of the customer there is no binding contract between the purchaser and the customer. The contract, therefore, is made in New Jersey, and the rights of the respective parties to the transaction would be governed by the law of New Jersey. Here the offer is made in New York, accepted in New Jersey, and calls for performance by delivery in New York of a product which, by reason of its nature, originates in Pennsylvania and does not come within the State of New York until delivery is made by the petitioner from its New Jersey yard. So far as appears, delivery from a New York yard was not contemplated in any of the transactions involved. It is true that petitioner could have performed by delivering coal from a yard within the city, but, in the instances under review, it did not do so.

In cases where the tax has been upheld it will be found that the contract was entered into locally. In the *Sears, Roebuck* case, above referred to, the opinion states: " All parties to the controversy concede that the contracts of sale or the sales were made in New York city. * * * The sale was complete in New York city; the price was to be paid in New York city; in every respect it was a New York State contract, governed by the laws of this State."

In *Wiloil Corporation* v. *Pennsylvania* (294 U. S. 169) a tax was imposed upon all liquid fuels used or sold and delivered by distributors in Pennsylvania. The appellant was a Pennsylvania corporation having its principal place of business in Pittsburg and sold liquid fuels. The transaction there under review involved the contents of thirteen tank cars sold and delivered by the appellant. They had been ordered through appellant's agent in Philadelphia for delivery to purchasers at Philadelphia or at Essington. The appellant obtained the fuels from a company in Wilmington, Del., and they were shipped to the purchasers in Pennsylvania. In upholding the tax it was pointed out that the appellant was not required to obtain the fuels at Wilmington. It was free to effect performance by shipping from any place within or without Pennsylvania. The contract was entered into in Pennsylvania and could have been completely performed within Pennsylvania without regard to the source of supply outside that State.

In the *French Line* case, above referred to, it will be noted, also, that the contract was entered into in New York. (See *Matter of Compagnie Generale Transatlantique* v. *McGoldrick, supra.*)

Local taxation may not be escaped solely on the ground that it imposes a burden on interstate commerce. Where, however, the burden is capable of being imposed

in equal right by every State which the commerce touches, the courts have refused to sustain the tax. If the transactions here under review are held subject to the local taxes, there is nothing to prevent the imposition of a sales tax in New Jersey, where the sale is made.

My conclusion is that the sales involved here are not subject to the tax assessed. The determination of the comptroller should, therefore, be annulled.