In the Matter of SEARS, ROEBUCK & Co., Appellant, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Respondent.

Argued October 25, 1938; decided November 29, 1938.

Robert D. Steefel, Sol M. Stroock, Peter I. B. Lavan and Bernard E. Brandes for appellant. The city of New York cannot tax under Local Law No. 20 of 1934, as amended, receipts from a transaction in which the contract of sale requires and contemplates the delivery of goods from outside of the State to the customer within the State. (*Matter of National Cash Register Co. v. Taylor*, 276 N. Y. 208; *Matter of West Publishing Co. v. Taylor*, 276 N. Y. 535; *Matter of Compagnie Generale Transatlantique v. McGoldrick*, 254 App. Div. 237; *Matter of Felt & Tarrant Mfg. Co. v. Taylor*, 254 App. Div. 246; *Montgomery Ward & Co. v. Frye*, 277 Mich. 260; *Sonneborn Bros. v. Cureton*, 262 U. S. 506; *Rearick v. Pennsylvania*, 203 U. S. 507; *Caldwell v. North Carolina*, 187 U. S. 622; *Dozier v. Alabama*, 218 U. S. 124; *Real Silk Hosiery Mills, Inc., v. City of Portland*, 268 U. S. 325; *Stewart v. Michigan*, 232 U. S. 665; *Cook v. Pennsylvania*, 97 U. S. 566; *Henneford v. Mason Co.*, 3,00 U. S. 577.) That "ship direct" sales contemplate and require interstate commerce is not altered by the fact that the contract of sale is made in New York city. (*Sonneborn Bros. v. Cureton*, 262 U. S. 506; *Rearick v. Pennsylvania*, 203 U. S. 507; *Caldwell v. North Carolina*, 187 U. .S. 622; *Dozier v. Alabama*, 218 U. S. 124; *Stewart v. Michigan*. 232 U. S. 665; *Brennan v. Titusville*, 153 U. S. 289; *Real Silk Hosiery Mills, Inc., v. City of Portland*, 268 U. S. 325.) A local tax on any interstate activity violates the commerce clause of the Federal Constitution because, were it not for the protection of the commerce clause, multiple taxation would always ensue. (*Case of the State Freight Tax*, 15 Wall. 232; *Robbins v. Shelby County Taxing District*, 120 U. S. 489; *Fargo v. Michigan*, 121 U. S. 230; *Galveston, H. & S. A. Ry. Co. v. Texas*, 210 U. S. 217; *New Jersey Bell Tel. Co. v. State Board of Taxes & Assessments*, 280 U. S. 338; *Cooney v. Mountain States Tel. & Tel. Co.*, 294 U. S. 384; *Fisher's Blend Station, Inc., v. State Tax Comm.*, 297 U. S. 650; *Puget Sound*

*Stevedoring Co.* v. *State Tax Comm.*, 302 U. S. 90; *American Mfg. Co.* v. *St. Louis*, 250 U. S. 459; *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86; *Henneford* v. *Mason Co.*, 300 U. S. 577; *Sonneborn Bros.* v. *Cureton*, 262 U. S. 506.) The transactions take place not only in New York but also in New Jersey and Pennsylvania, and if these transactions could be lawfully taxed in New York they could likewise be lawfully taxed in New Jersey or Pennsylvania. (*Adams Mfg. Co.* v. *Storen*, 304 U. S. 307; *James* v. *Dravo Contracting Co.*, 302 U. S. 134; *Hans Rees' Sons* v. *North Carolina*, 283 U. S. 123; *Shaffer* v. *Carter*, 252 U. S. 37; *People ex rel. Stafford* v. *Travis*, 231 N. Y. 339; *Kresge Co.* v. *Bennett*, 51 Fed. Rep. [2d]. 353; 287 U. S. 565; *Fisher's Blend Station* v. *State Tax Comm.*, 297 U. S. 650.)

*William C. Chanler, Corporation Counsel* (*Sol Charles Levine, Edmund B. Hennefeld, Jerome R. Hellerstein* and *Milton Sandberg* of counsel), for respondent. A tax imposed upon every person who purchases goods at retail and obtains possession of them within the State for his own use and consumption, regardless of the source of the goods, cannot constitute such a burden upon interstate commerce as to violate the commerce clause of the Federal Constitution. (*Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250; *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.*, 303 U. S. 604; *Baldwin* v. *Seelig*, 294 U. S. 511; *Wiloil Corp.* v. *Pennsylvania*, 294 U. S. 169; *Woodruff* v. *Parham*, 8 Wall. 123; *Hinson* v. *Lott*, 8 Wall. 148; *Superior Oil Co.* v. *Mississippi*, 280 U. S. 390; *Matter of Kesbec, Inc.*, v. *McGoldrick*, 278 N. Y. 293; *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86; *Matter of Leavy*, 85 Fed. Rep. [2d] 25; *Henneford* v. *Mason Co.*, 300 U. S. 577; *Edelman* v. *Boeing Air Transp.*, 289 U. S. 249; *Nashville, C. & St. L. Ry. Co.* v. *Wallace*, 288 U. S. 249; *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472; *Minnesota* v. *Blasius*, 290 U. S. 1; *Bacon* v. *Illinois*, 227 U. S. 504;

*Susquehanna Coal Co.* v. *South Amboy*, 228 U. S. 665; *Brown* v. *Houston*, 114 U. S. 622.) The transactions are purely local in all their material aspects, and could not be taxed in any other jurisdiction. (*Alpha Portland Cement Co.* v. *Massachusetts*, 268 U. S. 203; *Cheney Bros. Co.* v. *Massachusetts*, 246 U. S. 147; *Case of State Freight Tax*, 15 Wall. 232; *Fargo* v. *Michigan*, 121 U. S. 230; *Minnesota* v. *Blasius*, 290 U. S. 1; *Western Live Stock* v. *Bureau of Revenue*, 303 U. S. 250.) Interstate commerce was neither required nor contemplated by the transactions here involved. (*Matter of McNeel Marble Co.* v. *Graves*, 247 App. Div. 242; 275 N. Y. 601; *Kansas City Structural Steel Co.* v. *Arkansas*, 269 U. S. 148; *Browning* v. *City of Waycross*, 233 U. S. 16; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Wiloil Corp.* v. *Pennsylvania*, 294 U. S. 169.) Since the subject of the tax is a purchase which is local to New York city only, there is no possibility of multiple taxation. (*Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86; *Henneford* v. *Mason Co.*, 300 U. S. 577; *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.*, 303 U. S. 604.) There is no possibility of multiple taxation since the tax is borne by the purchaser, who is subject to tax in no other State. (*Helvering* v. *Mountain Producers Corp.*, 303 U. S. 376; *Helvering* v. *Gerhardt*, 304 U. S. 405; *Matter of Leavy*, 85 Fed. Rep. [2d] 25.)

CRANE, Ch. J. By Local Law No. 24 (published as No. 25) of 1934, enacted pursuant to authorization granted by the State Legislature (Laws of 1934, ch. 873), the city of New York imposes a tax of two per cent upon receipts from every sale of tangible personal property sold within the city. The tax must be paid by the purchaser to the vendor, who is required to keep records and make a return to the Comptroller of his receipts and of the tax payable thereon. A sale is defined as any transfer of title or possession, or both, for a consideration. A sale at retail is a sale for any purpose other than for resale. Although ordinarily the tax is collected by the vendor

from the purchaser, the Comptroller may collect the tax directly from the purchaser. Where the vendor fails to collect the tax the purchaser is required to file a return and pay the tax directly to the Comptroller.

Sears, Roebuck & Co. has been required to pay a tax for the years 1934 and 1935 upon sales made at its stores in New York city, the goods or merchandise being sent from its warehouses or plants in other States. Payment has been resisted under the plea that such a tax is unconstitutional, as a burden upon interstate commerce. This tax has been sustained by the Appellate Division.

The petitioner conducts and operates nine retail stores within the city of New York. The principal office of the petitioner, which is a New York corporation, is at Chicago, Illinois. It has no factory or warehouse in the city of New York except a piano factory and except one warehouse in the borough of Brooklyn, which stores ready to wear suits, dresses, coats and other articles of clothing, piece goods, notions and other light merchandise. Sears, Roebuck & Co. maintains a control store at Philadelphia, Pennsylvania, which is a distributing plant for all of the New York stores and other stores in various parts of the east of the United States, and the executives at this control store have charge of and supervision over the New York stores. The company also maintains a factory at Port Newark, New Jersey, where there are manufactured and assembled bulky articles, such as mill work, roofer materials, heating equipment and the like. The articles involved on this review are described as " ship direct orders." Certain articles which are large and bulky, or which must be assembled and put together before they are ready for delivery to the customer, are not kept in stock in the company's New York stores, but are kept either at the control store in Philadelphia, or are kept or manufactured upon order, at the factory at Port Newark, New Jersey. At Boston, Massachusetts, there is the Boston mail order control store.

The regional auditor gave the following testimony: "Q. When you make a sale or take an order for this type of merchandise do you have samples at your store? A. There are samples on display in the store and that is all that is in the store; because of the type of merchandise, it is entirely too bulky to carry it in the stores."

The practice, so the petitioner stated in its petition for review, is for a customer to come to one of the retail stores in New York city and order the merchandise in question. He is informed by the salesman that the merchandise is not kept in stock, but must be ordered from either Philadelphia or Port Newark, as the case may be. His order is taken and if it is a cash transaction, he pays his money, or, if it is a credit transaction, his credit is checked. A sales slip is made out, which states that the merchandise is to be shipped either from the Philadelphia control store or Port Newark direct to the customer at his home within the city of New York. A duplicate of the sales slip is sent to Port Newark or Philadelphia. The order is filled and is shipped by United States mail or by common carrier. The sample of sales slip, taxpayer's exhibit No. 6, for horsehide coat, size 48, simply has written diagonally across the bottom in lead pencil, " Ship from Phila control Store." These sales slips are not signed by the purchaser.

Approximately eighty-five per cent of the sales at New York city stores are filled from a stock of merchandise kept in New York city. As to the remaining fifteen per cent, the goods are standard merchandise regularly carried in stock by the company as a retail dealer, none of which is manufactured to order, with the exception of mill work. At the nine retail stores during the period in question the appellant sold $2,750,857.99 worth of goods. Of these sales, $2,288,113.59 represented orders filled from stock kept in New York city stores or in the warehouse maintained in Brooklyn. The balance of $462,744.40 consisted of sales filled from stock held in

warehouses maintained in Philadelphia, Port Newark or Boston.

The two per cent tax on the sales of merchandise in the stores in New York city has been paid. This appeal involves solely the tax on the " shipped direct orders." All parties to the controversy concede that the contracts of sale or the sales were made in New York city. The delivery was made from the company's warehouse or control stores according to shipping directions directly to the purchaser's home.

When the purchaser entered one of the defendant's stores and made a contract to buy certain merchandise, according to the sample displayed, his purpose and object were to procure the article, irrespective of the place from which it was delivered. It made no difference to him whether it came from Philadelphia, Port Newark or Boston, as long as he got it on time and in good condition. The delivery from the warehouses of the appellant outside the State was a matter of convenience or economy in the methods of conducting the appellant's business. It cannot be said that the shipments out of the State were one of the important features of the contract. It was incidental to the contract, the obligation of the defendant being to deliver the article purchased. From where it should come was a matter of its choice.

On these facts, has interstate commerce been burdened or interfered with in such a way as to make this city tax upon the proceeds of these " shipped direct orders " unconstitutional? In the first place, Sears, Roebuck & Co. paid no more tax on these articles which it had delivered from its stores in Philadelphia or Port Newark or Boston than it paid on the goods sold and delivered from its nine stores in New York city. It paid no more tax than a seller would have paid or, to be more exact, a purchaser would have paid, if the goods had been purchased and delivered in New York city from any other vendor. There was here no discrimination against

the interstate commerce or the shipment of goods from out the State. Neither could there possibly be any double taxation involved. The sale was complete in New York city; the price was to be paid in New York city; in every respect it was a New York State contract, governed by the laws of this State. The delivery of standard stock goods for the convenience of the seller was made from warehouses or storeplaces outside of the State. Under such circumstances, to permit Sears, Roebuck & Co. to evade this tax would really be a discrimination against people doing business within the city of New York with storehouses or mills there. Besides, if such sales were to go untaxed, a door would be open for an evasion, unfair indeed to those who did not care to resort to such methods. Merchandise could be stored or kept outside the State and sold by sample within the State, without paying a tax. Not every merchant can afford such storehouses. No principle of interstate commerce forces us to such a conclusion. " Even interstate business must pay its way." (*Postal-Telegraph Cable Co.* v. *City of Richmond*, 249 U. S. 252, 259.)

The counsel have relied upon *Matter of National Cash Register Co.* v. *Taylor* (276 N. Y. 208). The sales there were made and consummated in Ohio where the company approved, accepted and executed the orders or sales. To the same effect was *Matter of West Publishing Co.* v. *Taylor* (276 N. Y. 535). The reasons and principles here expressed find their source or, rather, their support, in such cases as *Adams Manufacturing Co.* v. *Storen* (304 U. S. 307); *Coverdale* v. *Arkansas-Louisiana Pipe Line Co.* (303 U. S. 604); *Western Live Stock* v. *Bureau of Revenue* (303 U. S. 250); *Henneford* v. *Mason Co.* (300 U. S. 577); *Wiloil Corp.* v. *Pennsylvania* (294 U. S. 169); *Monamotor Oil Co.* v. *Johnson* (292 U. S. 86); *Banker Brothers Co.* v. *Commonwealth of Pennsylvania* (222 U. S. 210).

The order should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Order affirmed.