309 U.S. 33 (1940)
McGOLDRICK, COMPTROLLER OF THE CITY OF NEW YORK,
v.
BERWIND-WHITE COAL MINING CO.
No. 475.
Supreme Court of United States.
Argued January 2, 1940.
Decided January 29, 1940.
CERTIORARI TO THE SUPREME COURT OF NEW YORK.
*34 Mr. William C. Chanler, with whom Messrs. Sol Charles Levine, Edmund B. Hennefeld, and Jerome R. Hellerstein were on the brief, for petitioner.
Mr. John W. Davis, with whom Messrs. Montgomery B. Angell and Marvin Lyons were on the brief, for respondent.
*41 MR. JUSTICE STONE delivered the opinion of the Court.
The question for decision is whether the New York City tax laid upon sales of goods for consumption, as applied to respondent, infringes the commerce clause of the Federal Constitution.
Upon certiorari to review a determination by the Comptroller of the City of New York that respondent was subject to New York City sales tax in the sum of $176,703, the Appellate Division of the New York Supreme Court held that the taxing statute as applied to respondent does so infringe, 255 App. Div. 961; 8 N.Y.S.2d 668, on the authority of Matter of National Cash Register Co. v. *42 Taylor, 276 N.Y. 208; 11 N.E.2d 881, cert. den., 303 U.S. 656; Matter of Compagnie Generale Transatlantique v. McGoldrick, 279 N.Y. 192; 18 N.E.2d 28. The New York Court of Appeals affirmed without opinion, 281 N.Y. 610, but its amended remittitur declared that the affirmance was upon the sole ground that the taxing statute as applied violated the commerce clause, id. 670. We granted certiorari, 308 U.S. 546, the question presented being of public importance, upon a petition which challenged the decision of the state court as not in accord with applicable decisions of this Court in Banker Brothers v. Pennsylvania, 222 U.S. 210; Wiloil Corporation v. Pennsylvania, 294 U.S. 169.
Chapter 815 of the New York Laws of 1933, as amended by Chapter 873 of the New York Laws of 1934, authorized the City of New York, for a limited period within which the present tax was laid, "to adopt and amend local laws imposing in . . . [the] city any tax . . . which the legislature has or would have power and authority to impose." It directed that "a tax imposed hereunder shall have application only within the territorial limits" of the city; and that "this Act shall not authorize the imposition of a tax on any transaction originating and/or consummated outside of the territorial limits of . . . [the] city, notwithstanding that some act be necessarily performed with respect to such transaction within such limits." It required the revenues from the tax to be used exclusively for unemployment relief.
Pursuant to this authority the municipal assembly of the City of New York adopted Local Law No. 24 of 1934 (published as Local Law No. 25), since annually renewed, which laid a tax upon purchasers for consumption of tangible personal property generally (except foods and drugs furnished on prescription), of utility services in supplying gas, electricity, telephone service, etc., and of meals consumed in restaurants. By § 2 the tax was fixed at "two percentum upon the amount of the receipts from *43 every sale in the city of New York," "sale" being defined by § 1 (e) as "any transfer of title or possession, or both . . . in any manner or by any means whatsoever for a consideration or any agreement therefor." Another clause of § 2[1] commands that the tax "shall be paid by the purchaser to the vendor, for and on account of the City of New York." By the same clause the vendor, who is authorized to collect the tax, is required to charge it to the purchaser, separately from the sales price; and is made liable, as an insurer, for its payment to the city. By §§ 4 and 5 the vendor is required to keep records and file returns showing the amount of the receipts from sales and the amount of the tax. In event of its nonpayment to the seller the buyer is required, within fifteen days after his purchase, to file a tax return and to pay the tax to the Comptroller, who is authorized by § 2 to set up a procedure for the collection of the tax from the purchaser. Purchases for resale are exempt from the tax, and a purchaser who pays the tax and later resells is entitled to a refund.
The ultimate burden of the tax, both in form and in substance, is thus laid upon the buyer, for consumption, of tangible personal property, and measured by the sales price. Only in event that the seller fails to pay over to the city the tax collected or to charge and collect it as the statute requires, is the burden cast on him. It is conditioned upon events occurring within the state, either *44 transfer of title or possession of the purchased property, or an agreement within the state, "consummated" there, for the transfer of title, or possession. The duty of collecting the tax and paying it over to the Comptroller is imposed on the seller in addition to the duty imposed upon the buyer to pay the tax to the Comptroller when not so collected. Such, in substance, has been the construction of the statute by the state courts. Matter of Atlas Television Co., 273 N.Y. 51; 6 N.E.2d 94; Matter of Merchants Refrigerating Co. v. Taylor, 275 N.Y. 113; 9 N.E.2d 799; Matter of Kesbec, Inc. v. McGoldrick, 278 N.Y. 293; 16 N.E.2d 288.
Respondent, a Pennsylvania corporation, is engaged in the production of coal of specified grades, said to possess unique qualities, from its mines within that state and in selling it to consumers and dealers. It maintains a sales office in New York City and sells annually to its customers 1,500,000 tons of its product, of which approximately 1,300,000 tons are delivered by respondent to some twenty public utility and steamship companies. The coal moves by rail from mine to dock in Jersey City, thence in most instances by barge to the point of delivery. All the sales contracts with the New York customers in question were entered into in New York City, and with two exceptions, presently to be considered separately, call for delivery of the coal by respondent by barge, alongside the purchasers' plants or steamships. In many instances the price of the coal was stated to be subject to any increase or decrease of mining costs including wages, and of railroad rates between the mines and the Jersey City terminal to which the coal was to be shipped. All the deliveries, with the exceptions already noted, were made within New York City, and all such are concededly subject to the tax except insofar as it infringes the commerce clause.
*45 Section 8 of the Constitution declares that "Congress shall have power . . . to regulate commerce with foreign Nations, and among the several States. . . ." In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. See Gibbons v. Ogden, 9 Wheat. 1, 187; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185. Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce, and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon commerce between the states.[2]
*46 But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, Western Live Stock v. Bureau, 303 U.S. 250, 254. Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, *47 which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress. A tax may be levied on net income wholly derived from interstate commerce.[3] Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited.[4] The like taxation of property, shipped interstate, before its movement begins,[5] or after it ends,[6] is not a forbidden regulation. An excise for the warehousing of merchandise preparatory to its interstate shipment or upon its use,[7] or withdrawal for use,[8] by the consignee after the interstate journey has ended is not precluded. Nor is taxation of a local business or occupation which is separate and distinct from the transportation or intercourse which is interstate commerce, forbidden merely because in the ordinary course such transportation or intercourse is induced or occasioned by such business, or is prerequisite to it. Western Live Stock v. Bureau, supra, 253, and cases cited.
*48 In few of these cases could it be said with assurance that the local tax does not in some measure affect the commerce or increase the cost of doing it. But in them as in other instances of constitutional interpretation so as to insure the harmonious operation of powers reserved to the states with those conferred upon the national government, courts are called upon to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed. See Woodruff v. Parham, 8 Wall. 123, 131; Brown v. Houston, 114 U.S. 622; Galveston, H. & S.A.R. Co. v. Texas, 210 U.S. 217, 225, 227; South Carolina Highway Dept. v. Barnwell Bros., supra; Ford Motor Co. v. Beauchamp, 308 U.S. 331; cf. Metcalf & Eddy v. Mitchell, 269 U.S. 514, 523, et seq.; Board of County Comm'rs of Jackson County v. United States, 308 U.S. 343.
Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey. Each imposes a burden which intrastate commerce does not bear, and merely because interstate commerce is being done places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce.
The present tax as applied to respondent is without the possibility of such consequences. Equality is its theme, *49 cf. Henneford v. Silas Mason Co., 300 U.S. 577, 583. It does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the state, of goods for consumption, regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end. Such a tax has no different effect upon interstate commerce than a tax on the "use" of property which has just been moved in interstate commerce, sustained in Monamotor Oil Co. v. Johnson, 292 U.S. 86; Henneford v. Silas Mason Co., supra; Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62; Southern Pacific Co. v. Gallagher, 306 U.S. 167, or the tax on storage or withdrawal for use by the consignee of gasoline, similarly sustained in Gregg Dyeing Co. v. Query, 286 U.S. 472; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249; Edelman v. Boeing Air Transport, 289 U.S. 249, or the familiar property tax on goods by the state of destination at the conclusion of their interstate journey. Brown v. Houston, supra; American Steel & Wire Co. v. Speed, 192 U.S. 500.
If, as guides to decision, we look to the purpose of the commerce clause to protect interstate commerce from discriminatory or destructive state action, and at the same time to the purpose of the state taxing power under which interstate commerce admittedly must bear its fair share of state tax burdens, and to the necessity of judicial reconciliation of these competing demands, we can find no adequate ground for saying that the present tax is a regulation which, in the absence of Congressional action, *50 the commerce clause forbids.[9] This Court has uniformly sustained a tax imposed by the state of the buyer upon a sale of goods, in several instances in the "original package," effected by delivery to the purchaser upon arrival at destination after an interstate journey, both when the local seller has purchased the goods extra-state for the purpose of resale, Woodruff v. Parham, supra; Hinson v. Lott, 8 Wall. 148; Banker Bros. v. Pennsylvania, supra; Wiloil Corp. v. Pennsylvania, supra; Graybar Electric Co. v. Curry, 308 U.S. 513; 238 Ala. 116; 189 So. 186, and when the extra-state seller has shipped them into the taxing state for sale there. Hinson v. Lott, supra; Sonneborn Bros. v. Cureton, 262 U.S. 506. It has likewise sustained a fixed-sum license tax imposed on the agent of the interstate seller for the privilege of selling merchandise brought into the taxing state for the purpose of sale. Howe Machine Co. v. Gage, 100 U.S. 676; Emert v. Missouri, 156 U.S. 296; Kehrer v. Stewart, 197 U.S. 60; Baccus v. Louisiana, 232 U.S. 334; Wagner v. Covington, 251 U.S. 95.
The only challenge made to these controlling authorities is by reference to unconstitutional "burdens" on interstate commerce made in general statements which are inapplicable here because they are torn from their setting in judicial opinions and speak of state regulations or taxes of a different kind laid in different circumstances from those with which we are now concerned. See for example, Galveston, H. & S.A.R. Co. v. Texas, supra; Cooney v. Mountain States Telephone Co., 294 U.S. 384; Fisher's Blend Station v. Tax Commission, 297 U.S. 650. Others will presently be discussed. But unless we are now to reject the plain teaching of this line of sales tax *51 decisions, extending back for more than seventy years from Graybar Electric Co. v. Curry, supra, decided this term, to Woodruff v. Parham, supra, the present tax must be upheld. As we have seen, the ruling of these decisions does not rest on precedent alone. It has the support of reason and of a due regard for the just balance between national and state power. In sustaining these taxes on sales emphasis was placed on the circumstances that they were not so laid, measured or conditioned as to afford a means of obstruction to the commerce or of discrimination against it, and that the extension of the immunity of the commerce clause contended for would be at the expense of state taxing power by withholding from taxation property and transactions within the state without the gain of any needed protection to interstate commerce. Woodruff v. Parham, supra, 137, 140; Hinson v. Lott, supra, 152; Sonneborn Bros. v. Cureton, supra, 513, 514, 521; Wiloil Corp. v. Pennsylvania, supra, 174; cf. Brown v. Houston, supra; Henneford v. Silas Mason Co., supra, 583.[10]
*52 Apart from these more fundamental considerations which we think are of controlling force in the application of the commerce clause, we can find no adequate basis for distinguishing the present tax laid on the sale or purchase of goods upon their arrival at destination at the end of an interstate journey from the tax which may be laid in like fashion on the property itself. That the latter is a permissible tax has long been established by an unwavering line of authority. Brown v. Houston, supra; Coe v. Errol, 116 U.S. 517; Pittsburgh & Southern Coal Co. v. Bates, 156 U.S. 577; American Steel & Wire Co. v. Speed, supra, 520; General Oil Co. v. Crain, 209 U.S. 211; Bacon v. Illinois, 227 U.S. 504. As we have often pointed out, there is no distinction in this relationship between a tax on property, the sum of all the rights and powers incident to ownership, and the taxation of the exercise of some of its constituent elements. Nashville, C. & St. L. Ry. Co. v. Wallace, supra, 267, 268; Henneford v. Silas Mason Co., supra, 582; cf. Bromley v. McCaughn, *53 280 U.S. 124, 136-138. If coal situated as that in the present case was, before its delivery, subject to a state property tax, see Brown v. Houston, supra; Pittsburgh & Southern Coal Co. v. Bates, supra, transfer of possession of the coal upon a sale is equally taxable, see Wiloil Corp. v. Pennsylvania, supra, 175, just as was the storage or use of the property in similar circumstances held taxable in Nashville, C. & St. L. Ry. Co. v. Wallace, supra; Henneford v. Silas Mason Co., supra.
Respondent, pointing to the course of its business and to its contracts which contemplate the shipment of the coal interstate upon orders of the New York customers, insists that a distinction is to be taken between a tax laid on sales made, without previous contract, after the merchandise has crossed the state boundary, and sales, the contracts for which when made contemplate or require the transportation of merchandise interstate to the taxing *54 state. Only the sales in the state of destination in the latter class of cases, it is said, are protected from taxation by the commerce clause, a qualification which respondent concedes is a salutary limitation upon the reach of the clause since its use is thus precluded as a means of avoiding state taxation of merchandise transported to the state in advance of the purchase order or contract of sale.
But we think this distinction is without the support of reason or authority. A very large part, if not most of the merchandise sold in New York City, is shipped interstate to that market. In the case of products like cotton, citrus fruits and coal, not to mention many others which are consumed there in vast quantities, all have crossed the state line to seek a market, whether in fulfillment of a contract or not. That is equally the case with other goods sent from without the state to the New York market, whether they are brought into competition with like goods produced within the state or not. We are unable to say that the present tax, laid generally upon all sales to consumers within the state, subjects the commerce involved where the goods sold are brought from other states, to any greater burden or affects it more, in any economic or practical way, whether the purchase order or contract precedes or follows the interstate shipment. Since the tax applies only if a sale is made, and in either case the object of interstate shipment is a sale at destination, the deterrent effect of the tax would seem to be the same on both. Restriction of the scope of the commerce clause so as to prevent recourse to it as a means of curtailing state taxing power seems as salutary in the one case as in the other.
True, the distinction has the support of a statement obiter in Sonneborn Bros. v. Cureton, supra, 515, and seems to have been tacitly recognized in Ware & Leland v. Mobile County, 209 U.S. 405, 412, and Banker Bros. *55 Co. v. Pennsylvania, supra, although in each case a tax on the sale of goods brought into the state for sale was upheld. But we have sustained the tax where the course of business and the agreement for sale plainly contemplated the shipment interstate in fulfilment of the contract. Wiloil Corporation v. Pennsylvania, supra, 173; Graybar Electric Co. v. Curry, supra. In the same circumstances the Court has upheld a property tax on the merchandise transported, American Steel & Wire Co. v. Speed, supra; General Oil Co. v. Crain, supra; see Bacon v. Illinois, supra, 515, 516; upon its use, Monamotor Oil Co. v. Johnson, supra; Felt & Tarrant Co. v. Gallagher, supra, and upon its storage; cf. Gregg Dyeing Co. v. Query, supra; Nashville, C. & St. L. Ry. Co. v. Wallace, supra. Taxation of property or the exercise of a power over it immediately preceding its previously contemplated shipment interstate has been similarly sustained. Coe v. Errol, supra; Bacon v. Illinois, supra; Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17. For reasons already indicated all such taxes upon property or the exercise of the powers of ownership stand in no different relation to interstate commerce and have no different effect upon it than has the present sales tax upon goods whose shipment interstate into the taxing state was contemplated when the contract was entered into.
It is also urged that the conclusion which we reach is inconsistent with the long line of decisions of this Court following Robbins v. Shelby County Taxing District, 120 U.S. 489, which have held invalid, license taxes to the extent that they have sought to tax the occupation of soliciting orders for the purchase of goods to be shipped into the taxing state. In some instances the tax appeared to be aimed at suppression or placing at a disadvantage this type of business when brought into competition with competing intrastate sales. See Robbins v. Shelby County *56 Taxing District, supra, 498; Caldwell v. North Carolina, 187 U.S. 622, 632.[11] In all, the statute, in its practical operation, was capable of use, through increase in the tax, and in fact operated to some extent to place the merchant thus doing business interstate at a disadvantage in competition with untaxed sales at retail stores within the state. While a state, in some circumstances, may by taxation suppress or curtail one type of intrastate business to the advantage of another type of competing business which is left untaxed, see Puget Sound Power & Light Co. v. Seattle, 291 U.S. 619, 625, and cases cited, it does not follow that interstate commerce may be similarly affected by the practical operation of a state taxing statute. Compare Hammond Packing Co. v. Montana, 233 U.S. 331, Magnano Co. v. Hamilton, 292 U.S. 40, with Schollenberger v. Pennsylvania, 171 U.S. 1; Robbins v. Shelby County Taxing District, supra; Sprout v. South Bend, 277 U.S. 163. It is enough for present purposes *57 that the rule of Robbins v. Shelby County Taxing District, supra, has been narrowly limited to fixed-sum license taxes imposed on the business of soliciting orders for the purchase of goods to be shipped interstate, compare Robbins v. Shelby County Taxing District, supra, with Ficklen v. Shelby County Taxing District, 145 U.S. 1; see Howe Machine Co. v. Gage, supra; Wagner v. Covington, supra; and that the actual and potential effect on the commerce of such a tax is wholly wanting in the present case.
Finally, it is said that the vice of the present tax is that it is measured by the gross receipts from interstate commerce and thus in effect reaches for taxation the commerce carried on both within and without the taxing state. Adams Manufacturing Co. v. Storen, 304 U.S. 307; Gwin, White & Prince v. Henneford, supra; cf. Western Live Stock v. Bureau, supra, 260. It is true that a state tax upon the operations of interstate commerce measured either by its volume or the gross receipts derived from it has been held to infringe the commerce clause, because the tax if sustained would exact tribute for the commerce carried on beyond the boundaries of the taxing state, and would leave each state through which the commerce passes free to subject it to a like burden not borne by intrastate commerce. See Western Live Stock v. Bureau, supra, 255; Gwin, White & Prince v. Henneford, supra, 439.
In Adams Manufacturing Co. v. Storen, supra, 311, 312, a tax on gross receipts, so far as laid by the state of the seller upon the receipts from sales of goods manufactured in the taxing state and sold in other states, was held invalid because there the court found the receipts derived from activities in interstate commerce, as distinguished from the receipts from activities wholly intrastate, were included in the measure of the tax, the sales price, without segregation or apportionment. It was pointed out, *58 pages 310, 311 and 312, that had the tax been conditioned upon the exercise of the taxpayer's franchise or its privilege of manufacturing in the taxing state, it would have been sustained, despite its incidental effect on interstate commerce, since the taxpayer's local activities or privileges were sufficient to support such a tax, and that it could fairly be measured by the sales price of the goods. Compare American Manufacturing Co. v. St. Louis, 250 U.S. 459, with Crew Levick Co. v. Pennsylvania, 245 U.S. 292. See Western Live Stock v. Bureau, supra, 257-259; cf. Bass, Ratcliff & Gretton v. State Tax Commission, 266 U.S. 271, 280; Educational Films Corp. v. Ward, 282 U.S. 379, 387-8; Pacific Co. v. Johnson, 285 U.S. 480.
The rationale of the Adams Manufacturing Co. case does not call for condemnation of the present tax. Here the tax is conditioned upon a local activity, delivery of goods within the state upon their purchase for consumption. It is an activity which, apart from its effect on the commerce, is subject to the state taxing power. The effect of the tax, even though measured by the sales price, as has been shown, neither discriminates against nor obstructs interstate commerce more than numerous other state taxes which have repeatedly been sustained as involving no prohibited regulation of interstate commerce.
In two instances already noted, respondent's contracts with Austin, Nichols & Co. and with the New England Steamship Company call for delivery of the coal at points outside of New York, in the one case f.o.b. at the mines in Pennsylvania, and in the other at the pier in Jersey City, New Jersey, and deliveries were made accordingly.
Respondent asked the state courts to rule that the taxing act did not apply to these transactions, particularly because the enabling statute expressly prohibits the city from imposing a tax upon "any transaction originating and/or consummated outside the territorial limits of the City." See Matter of Gunther's Sons v. McGoldrick, *59 279 N.Y. 148; 18 N.E.2d 12. This question the state courts left unanswered, the Court of Appeals resting its decision wholly on the constitutional ground.
Upon the remand of this cause for further proceedings not inconsistent with this decision, the state court will be free to decide the state question, and the remand will be without prejudice to the further presentation to this Court of any federal question remaining undecided here, if the state court shall determine that the taxing statute is applicable.
Reversed.
MR. CHIEF JUSTICE HUGHES, dissenting.
The pressure of mounting outlays has led the States to seek new sources of revenue, and we have gone far in sustaining state power to tax property and transactions subject to their jurisdiction despite incidental or indirect effects upon interstate commerce. But hitherto we have also maintained the principle that the States cannot lay a direct tax upon that commerce. In the instant case, the Court of Appeals of New York has decided unanimously that the tax as here applied is such a tax and goes beyond the limit of state power. 281 N.Y. 610. See, also, Matter of National Cash Register Co. v. Taylor, 276 N.Y. 208; 11 N.E.2d 881. I think that the judgment should be affirmed.
The case is one of interstate commerce in its most obvious form. The Berwind-White Company is a Pennsylvania corporation engaged in mining coal in that State. It has a sales office in New York. Its coal is mined from two veins known as "B Seam" and "C Prime Seam." The coal is sold to New York consumers for plants and steamships. The contracts of sale call for coal from the seller's mines in Pennsylvania, most of it being of the "B Seam" sort. The contracts are generally for a specified period, orders being given as coal is needed. The purchasers *60 notify the mining company of their requests, whereupon the coal is mined to meet the orders, two days being allowed for mining and five for transportation. The coal is transported from the mines by railroad to a pier in Jersey City where the seller's barges take the coal and bring it alongside the purchasers' plant or steamship where delivery is made, the purchasers doing the unloading. There were two purchasers who took delivery outside New York.
The tax is two per cent of the entire purchase price. The Court of Appeals has described the tax as "two per cent upon receipts from every sale of tangible personal property sold within the City." Matter of Sears, Roebuck & Co. v. McGoldrick, 279 N.Y. 184, 187; 18 N.E.2d 25. There can be no doubt as to the incidence of the tax in this instance. The Comptroller of the City has assessed the tax against the seller, the Berwind-White Company. The statute requires the seller, under penalty, to file a return of its sales and to pay the tax. To enforce the payment, the property of the seller may be levied upon under a Comptroller's warrant. It is the tax so laid that the City now demands. In the Matter of Atlas Television Co., 273 N.Y. 51, 57, 58; 6 N.E.2d 94, the Court of Appeals held that the contention that the seller was required only to collect the tax as the agent of the City could not be sustained and hence it was decided that in case of the seller's insolvency the City was entitled to priority of payment. The court said: "The duty of payment to the city is laid upon the vendor, not the purchaser. His liability is not measured by the amount actually collected from the purchaser but by the receipts required to be included in such return. (§ 6.) He must pay the tax even if failure to collect is due to no fault of his own." This statement was repeated in Matter of Merchants Refrigerating Co. v. Taylor, 275 N.Y. 113, 118; 9 N.E.2d 799, and while it was there said that the *61 Atlas case did not hold that the sales tax was "imposed" on the vendor, still the court again ruled that the vendor "is under a duty to pay the tax to the city regardless of whether or not the vendor collects it from the purchaser." Id., p. 124. If the vendor must pay the tax whether or not he can recoup the amount from the purchaser, and the tax, as here, is assessed against the vendor, it would seem inadmissible to defend the tax upon the ground that it is a tax upon the purchaser. From any point of view, the tax now contested is laid upon interstate sales.
In confiding to Congress the power to regulate interstate commerce, the aim was to provide a free national market,  to pull down and prevent the re-erection of state barriers to the free intercourse between the people of the States. That free intercourse was deemed, and has proved, to be essential to our national economy. It should not be impaired. As we recently said in Baldwin v. Seelig, 294 U.S. 511, 522: "Imposts and duties upon interstate commerce are placed beyond the power of a state, without the mention of an exception, by the provision committing commerce of that order to the power of the Congress. . . . `It is the established doctrine of this court that a state may not, in any form or under any guise, directly burden the prosecution of interstate business'."
Undoubtedly the problem of maintaining the proper balance between state and national power has been a most difficult one. We have recognized the power of the State to meet local exigencies in protecting health and safety and preventing fraud, as, for example, in the case of quarantine, pilotage and inspection laws, although interstate or foreign commerce is involved; that is, until Congress in the exercise of its paramount authority displaces such local requirements.[1] We have also recognized the *62 power of the State to tax property subject to its jurisdiction although the property has come from another State, when it is found that interstate commerce has ended and that the property has become a part of the common mass within the State. We have sustained the authority of the State to impose occupation taxes when they were deemed to be so measured or apportioned as to relate appropriately to the privilege of transacting an intrastate business. The application of these principles has led to close distinctions.[2] But that fact would seem to present no good reason for sweeping away the protection of interstate commerce where the State lays a direct tax upon that commerce as in this case.
We have said in a long line of decisions, that the State cannot tax interstate commerce either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it.[3] The same principle has been declared in recent cases. In Fisher's Blend Station v. Tax Commission, 297 U.S. 650, 655, we said: "As appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which *63 has long been held to be an unconstitutional burden on interstate commerce." There, a state occupation tax upon the gross receipts of the owner of a radio station from broadcasting programs to listeners within and beyond the State was held invalid. It was said to be enough that the tax was levied on gross receipts from the proprietor's "entire operations, which include interstate commerce." Id., p. 656. In Western Live Stock v. Bureau of Revenue, 303 U.S. 250, a tax on the gross receipts from the sale of advertising by a trade journal was sustained because in the last analysis the tax, like that upon the privilege of manufacturing within the State, was upon the carrying on of a local business in the preparing, printing and publishing a magazine. Id., p. 258. Soon after, we held in Adams Manufacturing Co. v. Storen, 304 U.S. 307, 311, that a state tax could not be constitutionally applied to the gross receipts derived by an Indiana corporation in interstate commerce through the sale of its products manufactured in Indiana to customers in other States. And, but a year ago, in Gwin, White & Prince v. Henneford, 305 U.S. 434, 435, 436, 438, we held invalid a state tax measured by the gross receipts from the business of marketing fruit shipped in interstate commerce from the State of production to places in other States where the sales and deliveries were made and the proceeds collected. If the question now before us is controlled by precedent, the result would seem to be clear.
In relation to the present transaction, it would hardly be contended that New York could tax the transportation of the coal from Pennsylvania to New York or a contract for that transportation. But the movement of the coal from the one State to the other was definitely required by the contracts of sale and these sales must be regarded as an essential part of the commercial intercourse *64 contemplated by the commerce clause. Gibbons v. Ogden, 9 Wheat. 1, 188. The tax on the gross receipts of the seller from these sales was manifestly an imposition upon the sales themselves. Whether the tax be small or large, it is plainly to the extent of it a burden upon interstate commerce; and as it is imposed immediately upon the gross receipts from that commerce, it is a direct burden. And, as we have often said, where what is taxed is subject to the jurisdiction of the State, the size of the tax lies within the discretion of the State, and not of this Court. A. Magnano Co. v. Hamilton, 292 U.S. 40, 45. See, also, Alaska Fish Co. v. Smith, 255 U.S. 44, 48.
How then can the laying of such a burden upon interstate commerce be justified? It is urged that there is a taxable event within the State. That event is said to be the delivery of the coal. But how can that event be deemed to be taxable by the State? The delivery is but the necessary performance of the contract of sale. Like the shipment from the mines, it is an integral part of the interstate transaction. It is said that title to the coal passes to the purchaser on delivery. But the place where the title passes has not been regarded as the test of the interstate character of a sale. We have frequently decided that where a commodity is mined or manufactured in one State and in pursuance of contracts of sale is delivered for transportation to purchasers in another State, the mere fact that the sale is f. o.b. cars in the seller's State and the purchaser pays the freight does not make the sale other than interstate.[4] And when, as here, the buyer in an interstate sale takes delivery in his own *65 State, that delivery in completion of the sale is as properly immune from state taxation as is the transportation to the purchaser's dock or vessel. Moreover, even if it were possible to sustain a state tax by reason of such delivery within the State, there would still be no ground for sustaining a tax upon the whole of the interstate transaction of which the delivery is only a part, as in the case of a tax upon the entire gross receipts.
Petitioner strongly insists that in substance the tax here should be regarded as the same as a use tax the validity of which this Court has sustained. Henneford v. Silas Mason Co., 300 U.S. 577; Southern Pacific Co. v. Gallagher, 306 U.S. 167. But in the Henneford case, Mr. Justice Cardozo, in speaking for the Court, was most careful to show that the use tax was upheld because it was imposed after interstate commerce had come to an end. In making this distinction, the Court clearly recognized that a tax imposed directly upon interstate commerce would be beyond the state's power, and the tax was sustained as one upon property which had come to rest within the State and like other property was subject to its jurisdiction. The Court said: "The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. . . . The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership." Id., p. 582. And later, in Puget Sound Co. v. State Tax Commission, 302 U.S. 90, 92, 94, Mr. Justice Cardozo in delivering the opinion of the Court, after showing that the business of the company, so far as it consisted of the loading and discharge of cargoes by longshoremen subject to its own control, was interstate or foreign commerce, concluded that the State was "not at liberty to tax the privilege of doing it by exacting in return therefor a percentage of the gross receipts." He observed that "Decisions *66 to that effect are many and controlling." The fact that a use tax, sustained as a tax upon an attribute of property which is subject to the jurisdiction of the State, may have an incidental or indirect effect upon interstate commerce, and thus in the opinion of commentators may tend to discourage interstate transactions, is certainly no excuse for going further and upholding the action of States which, looking with a jealous eye upon the freedom of interstate commerce, attempt to lay a direct tax upon that commerce.
The point was clearly brought out by Mr. Justice Holmes, speaking for the Court in Galveston, H. & S.A. Ry. Co. v. Texas, 210 U.S. 217, 227, when he referred to the necessity of maintaining the distinction between taxation of property within the State, which had long been upheld, and taxation of interstate business, which had been condemned. He observed that "When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce." Accordingly a state tax upon gross receipts which included receipts from interstate business was held invalid.
The ground most strongly asserted for sustaining the tax in the present case is that it is non-discriminatory. Undoubtedly a state tax may be bad because it is so laid as to involve a hostile discrimination against interstate commerce. But does it follow that a State may lay a direct tax upon interstate commerce because it is free to tax its own commerce in a similar way? Thus, a State may tax intrastate transportation, but it may not tax interstate transportation. The State may tax intrastate sales,[5] but can the State tax interstate sales in order to promote its local business? It would seem to be extraordinary *67 if a State could escape the restriction against direct impositions upon interstate commerce by first laying exactions upon its own trade and then insisting that in order to make its local policy completely effective it must be allowed to lay similar exactions upon interstate trade. That would apparently afford a simple method for extending state power into what has hitherto been regarded as a forbidden field. Moreover, it may or may not be in the interest of the State to promote domestic trade in a given commodity. The State may seek by its taxing scheme to restrict such trade and the mere equivalency of a tax upon domestic business would not prevent the injurious effect upon interstate transactions. See A. Magnano Co. v. Hamilton, supra.
So, while recognizing that a tax discriminating against interstate commerce is necessarily invalid, it has long been held by this Court in the interest of the constitutional freedom of that commerce that a direct tax upon it is not saved because the same or a similar tax is laid also upon intrastate commerce. The Court dealt specifically with that question in Robbins v. Shelby County Taxing District, 120 U.S. 489, 497, saying: "Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the state." See, also, Cooney v. Mountain States Telephone Co., 294 U.S. 384, 393, 394. And very recently, in Adams Manufacturing Co. v. Storen, supra, p. 312, where a tax on the gross receipts derived from interstate sales was held invalid, we said explicitly: "The opinion of the State Supreme Court stresses the generality and nondiscriminatory character of the exaction, but it is settled that this will not save the tax if it directly burdens interstate commerce."
We have directed attention to a vice in imposing direct taxes upon interstate commerce in that such taxes might *68 be imposed with equal right by every State which the commerce touches. This has been observed with respect to taxes upon gross receipts from interstate transactions. In Western Live Stock v. Bureau of Revenue, supra, p. 256, we said: "The multiplication of state taxes measured by the gross receipts from interstate transactions would spell the destruction of interstate commerce and renew the barriers to interstate trade which it was the object of the commerce clause to remove." See, also, Gwin, White & Prince v. Henneford, supra. But petitioner has insisted that in the present case there is no danger of multiple taxation in that New York puts its tax upon an event which cannot occur in any other State. Of course the delivery of the coal in New York is an event which cannot occur in another State. Just as New York cannot tax the shipment of coal from the mines in Pennsylvania or the transshipment of the coal in New Jersey, so neither Pennsylvania nor New Jersey can tax the delivery in New York. Petitioner's argument misses the point as to the danger of multiple taxation in relation to interstate commerce. The shipment, the transshipment and the delivery of the coal are but parts of a unitary interstate transaction. They are integral parts of an interstate sale. If, because of the delivery in New York, that State can tax the gross receipts from the sale, why cannot Pennsylvania by reason of the shipment of the coal in that State tax the gross receipts there? That would not be difficult, as the seller is a Pennsylvania corporation and, in fact, in many, if not in most, instances, the purchase price of the goods shipped to New York is there received. The point is not that the delivery in New York is an event which cannot be taxed by other States, but that the authority of New York to impose a tax on that delivery cannot properly be recognized without also recognizing the authority of other States to tax *69 the parts of the interstate transaction which take place within their borders. If New York can tax the delivery, Pennsylvania can tax the shipment and New Jersey the transshipment. And the latter States, respectively, would be as much entitled to tax the gross receipts from the sales as would New York. Even if it were assumed that the gross receipts from the interstate sales could be apportioned so that each State could tax such portion of the receipts as could be deemed to relate to the part of the transaction within its territory, still this would not help New York here, as there has been no attempt at apportionment. The taxation of the gross receipts in New York, on any appropriate view of what pertains to the interstate sales, would seem clearly to involve the danger of multiple taxation to which we have adverted in recent decisions.
Doubtless much can be said as to the desirability of a comprehensive system of taxation through the cooperation of the Union and the States so as to avoid the differentiations which beset the application of the commerce clause and thus to protect both state and national governments by a just and general scheme for raising revenues. However important such a policy may be, it is not a matter for this Court. We have the duty of maintaining the immunity of interstate commerce as contemplated by the Constitution. That immunity still remains an essential buttress of the Union; and a free national market, so far as it can be preserved without violence to state power over the subjects within state jurisdiction, is not less now than heretofore a vital concern of the national economy.
The tax as here applied is open to the same objection as a tariff upon the entrance of the coal into the State of New York, or a state tax upon the privilege of doing an interstate business, and in my view it cannot be sustained *70 without abandoning principles long established and a host of precedents soundly based.
MR. JUSTICE McREYNOLDS and MR. JUSTICE ROBERTS join in this opinion.
NOTES
[1] "Upon each taxable sale or service the tax to be collected shall be stated and charged separately from the sale price or charge for service and shown separately on any record thereof, at the time when the sale is made or evidence of sale issued or employed by the vendor and shall be paid by the purchaser to the vendor, for and on account of the city of New York, and the vendor shall be liable for the collection or the service rendered; and the vendor shall have the same right in respect to collecting the tax from the purchaser, or in respect to non-payment of the tax by the purchaser, as if the tax were a part of the purchase price of the property or service and payable at the time of the sale."
[2] Despite mechanical or artificial distinctions sometimes taken between the taxes deemed permissible and those condemned, the decisions appear to be predicated on a practical judgment as to the likelihood of the tax being used to place interstate commerce at a competitive disadvantage. See Galveston, H. & S.A.R. Co. v. Texas, 210 U.S. 217, 227. License taxes requiring a corporation engaged in interstate commerce to pay a fee of a certain percentage of its capital stock have been rejected because of the danger that each state in which the corporation does business may impose a similar tax, measured by its interstate business in all, Western Union v. Kansas, 216 U.S. 1; Atchison, T. & S.F. Ry. Co. v. O'Connor, 223 U.S. 280; Looney v. Crane Co., 245 U.S. 178; International Paper Co. v. Massachusetts, 246 U.S. 135, and have only been sustained when apportioned to that part of the capital thought to be attributable to an intrastate activity. National Leather Co. v. Massachusetts, 277 U.S. 413; International Shoe Co. v. Shartel, 279 U.S. 429; Ford Motor Co. v. Beauchamp, 308 U.S. 331. Privilege taxes requiring a percentage of the gross receipts from interstate transportation or from other activities in carrying on the movement of that commerce, which if sustained could be imposed wherever the interstate activity occurs, have been struck down for similar reasons. Fargo v. Michigan, 121 U.S. 230; Philadelphia & S. Steamship Co. v. Pennsylvania, 122 U.S. 326; Leloup v. Mobile, 127 U.S. 640; Galveston, H. & S.A.R. Co. v. Texas, 210 U.S. 217, cf. Gwin, White & Prince v. Henneford, 305 U.S. 434. Fixed-sum license fees, regardless of the amount, for the privilege of carrying on the commerce, have been thought likely to be used to overburden the interstate commerce, McCall v. California, 136 U.S. 104; Crutcher v. Kentucky, 141 U.S. 47; Barrett v. New York, 232 U.S. 14; Texas Transportation & Terminal Co. v. New Orleans, 264 U.S. 150. Taxation of articles in course of their movement in interstate commerce is similarly foreclosed. Case of State Freight Tax, 13 Wall. 232; Champlain Realty Co. v. Brattleboro, 260 U.S. 366; Hughes Bros. Co. v. Minnesota, 272 U.S. 469; Carson Petroleum Co. v. Vial, 279 U.S. 95. See Henderson, The Position of Foreign Corporations in American Constitutional Law, 117; Powell, Indirect Encroachment on Federal Authority by the Taxing Power of the States, 31 Harv. L. Rev. 321, 572, 721, 932; 32 Harv. L. Rev. 234, 374, 634, 902. Lying back of these decisions is the recognized danger that, to the extent that the burden falls on economic interests without the state, it is not likely to be alleviated by those political restraints which are normally exerted on legislation where it affects adversely interests within the state. See Robbins v. Shelby County Taxing District, 120 U.S. 489, 499; South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185, Note 2; cf. McCulloch v. Maryland, 4 Wheat. 316; Helvering v. Gerhardt, 304 U.S. 405, 412.
[3] United States Glue Co. v. Oak Creek, 247 U.S. 321; Underwood Typewriter Co. v. Chamberlain, 254 U.S. 113; Atlantic Coast Line R. Co. v. Daughton, 262 U.S. 413; Matson Navigation Co. v. State Board, 297 U.S. 441.
[4] Adams Express Co. v. Ohio, 165 U.S. 194; Wells Fargo & Co. v. Nevada, 248 U.S. 165; St. Louis & E. St. L. Ry. Co. v. Missouri, 256 U.S. 314; Southern Ry. Co. v. Watts, 260 U.S. 519.
[5] Coe v. Errol, 116 U.S. 517; Bacon v. Illinois, 227 U.S. 504; Heisler v. Thomas Colliery Co. 260 U.S. 245; Minnesota v. Blasius, 290 U.S. 1. Cf. Hope Natural Gas Co. v. Hall, 274 U.S. 284.
[6] Brown v. Houston, 114 U.S. 622; Pittsburgh & Southern Coal Co. v. Bates, 156 U.S. 577; American Steel & Wire Co. v. Speed, 192 U.S. 500; General Oil Co. v. Crain, 209 U.S. 211.
[7] Federal Compress & Warehouse Co. v. McLean, 291 U.S. 17; Chassaniol v. Greenwood, 291 U.S. 584.
[8] Eastern Air Transport v. South Carolina, 285 U.S. 147; Gregg Dyeing Co. v. Query, 286 U.S. 472; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U.S. 249; Edelman v. Boeing Air Transport, 289 U.S. 249.
[9] The imposition on the seller of the duty to insure collection of the tax from the purchaser does not violate the commerce clause. See Monamotor Oil Co. v. Johnson, supra; Felt & Tarrant Mfg. Co. v. Gallagher, supra.
[10] In all of these cases, except Henneford v. Silas Mason Co., supra, the taxed sale was of merchandise in the "original package," although the original package doctrine had been thought to be a "positive and absolute" limitation on the exercise of state power. American Steel & Wire Co. v. Speed, 192 U.S. 500, 521. The doctrine originated in Brown v. Maryland, 12 Wheat. 419, where a discriminatory tax on imports was involved. It was overthrown as to interstate commerce when the court found that it would be unjust to permit the merchant who engaged in interstate commerce to escape a tax which the state had levied on the sale of goods after their interstate shipment, but with equal justice on all merchants. Woodruff v. Parham, 8 Wall. 123; Hinson v. Lott, 8 Wall. 148. After its supposed recrudescence in Leisy v. Hardin, 135 U.S. 100, the opinions of Justice Miller in Woodruff v. Parham, supra, and of Justice Bradley in Brown v. Houston, 114 U.S. 622, were explained by Chief Justice (then Justice) White in American Steel & Wire Co. v. Speed, supra, at 521, as the recognition by the court that the question was not whether "interstate commerce was to be considered as having completely terminated," but whether a particular exertion of taxing power by a state "so operated upon interstate commerce as to amount to a regulation thereof, in conflict with the paramount authority conferred upon Congress." He pointed out that the Court in these cases "conceded that the goods which were taxed had not completely lost their character as interstate commerce since they had not been sold in the original package. As, however, they had arrived at their destination, were at rest in the State, were enjoying the protection which the laws of the State afforded, and were taxed without discrimination like all other property, it was held that the tax did not amount to a regulation in the sense of the Constitution, although its levy might remotely and indirectly affect interstate commerce." Cf. Cardozo, J., in Baldwin v. Seelig, 294 U.S. 511, 526.

"The test of the `original package,' which came into our law with Brown v. Maryland, 12 Wheat. 419, is not inflexible and final for the transactions of interstate commerce, whatever may be its validity for commerce with other countries. Cf. Woodruff v. Parham, supra; Anglo-Chilean Nitrate Sales Corp. v. Alabama, 288 U.S. 218, 226. There are purposes for which merchandise, transported from another state, will be treated as a part of the general mass of property at the state of destination though still in the original containers. This is so, for illustration, where merchandise so contained is subjected to a non-discriminatory property tax which it bears equally with other merchandise produced within the state. Sonneborn Bros. v. Cureton, 262 U.S. 506; Texas Co. v. Brown, 258 U.S. 466, 475; American Steel & Wire Co. v. Speed, 192 U.S. 500. . . . `A state tax upon merchandise brought in from another State, or upon its sales, whether in original packages or not, after it has reached its destination and is in a state of rest, is lawful only when the tax is not discriminating in its incidence against the merchandise because of its origin in another State.' Sonneborn Bros. v. Cureton, supra, at p. 516. Cf. Bowman v. Chicago & N.W. Ry. Co., 125 U.S. 465, 491; . . . In brief, the test of the original package is not an ultimate principle. It is an illustration of a principle. Pennsylvania Gas Co. v. Public Service Comm'n, 225 N.Y. 397, 403; 122 N.E. 260. It marks a convenient boundary and one sufficiently precise save in exceptional conditions. What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. Formulas and catchwords are subordinate to this overmastering requirement."
[11] When the Robbins case was decided, sixteen states required the payment of license taxes by some kinds of drummers. For citations of the statutes, see, Lockhart, Sales Tax in Interstate Commerce, 52 Harv. L. Rev. 617, 621. More recently it has been estimated that almost 800 municipal ordinances directed at drummers were adopted for the purpose of embarrassing this competition with local merchants. Hemphill, the House to House Canvasser in Interstate Commerce, 60 Am. L. Rev. 641. The court was cognizant of this trend, see Robbins v. Shelby County Taxing District, 120 U.S. 489, 498. Following this decision 19 such taxes were declared invalid. Carson v. Maryland, 120 U.S. 502; Asher v. Texas, 128 U.S. 129; Stoutenburgh v. Hennick, 129 U.S. 141; Brennan v. Titusville, 153 U.S. 289; Stockard v. Morgan, 185 U.S. 27; Caldwell v. North Carolina, 187 U.S. 622; Crenshaw v. Arkansas, 227 U.S. 389; Rogers v. Arkansas, 227 U.S. 401; Stewart v. Michigan, 232 U.S. 665; Davis v. Virginia, 236 U.S. 697; Real Silk Hosiery Mills v. Portland, 268 U.S. 325. Read in their proper historical setting these cases may be said to support the view that this kind of a tax is likely to be used "as an instrument of discrimination against interstate or foreign commerce," see DiSanto v. Pennsylvania, 273 U.S. 34, 39.
[1] See cases collected in Minnesota Rate Cases, 230 U.S. 352, 403-411.
[2] See Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254-257.
[3] Minnesota Rate Cases, 230 U.S. 352, 400; State Freight Tax Case, 15 Wall. 232; Robbins v. Shelby Taxing District, 120 U.S. 489; Philadelphia & Southern Mail S.S. Co. v. Pennsylvania, 122 U.S. 326; Leloup v. Mobile, 127 U.S. 640; McCall v. California, 136 U.S. 104; Brennan v. Titusville, 153 U.S. 289; Galveston, H. & S.A. Ry. Co. v. Texas, 210 U.S. 217; Western Union Telegraph Co. v. Kansas, 216 U.S. 1; Pullman Co. v. Kansas, 216 U.S. 56; Meyer v. Wells, Fargo & Co., 223 U.S. 298; Crenshaw v. Arkansas, 227 U.S. 389; Crew-Levick Co. v. Pennsylvania, 245 U.S. 292; Sonneborn Bros. v. Cureton, 262 U.S. 506, 515; Fisher's Blend Station v. Tax Commission, 297 U.S. 650, 655; Puget Sound Co. v. State Tax Commission, 302 U.S. 90; Adams Manufacturing Co. v. Storen, 304 U.S. 307, 311; Gwin, White & Prince v. Henneford, 305 U.S. 434, 439.
[4] Savage v. Jones, 225 U.S. 501, 520; Pennsylvania R. Co. v. Clark Coal Co., 238 U.S. 456, 465, 468; Carter v. Carter Coal Co., 298 U.S. 238, 320; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 463.
[5] Woodruff v. Parham, 8 Wall. 123; Sonneborn Bros. v. Cureton, 262 U.S. 506, 515, 516; Wiloil Corp. v. Pennsylvania, 294 U.S. 169, 175.