JOHN J. O'KANE, JR., et al., Copartners, Doing Business as JOHN J. O'KANE, JR., & Co., Appellants, v. STATE OF NEW YORK, Respondent.

(Claim No. 24798.)

Argued June 4, 1940; decided July 24, 1940.

*Earl Q. Kullman* for appellants. The transactions at bar were sales in interstate commerce and involved the export of property from the State — any tax thereon is void. (*Rearick* v. *Pennsylvania,* 203 U. S. 507; *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282.) The instruments indispensable to exportation or interstate commerce may not be taxed. (*McCulloch* v. *Maryland,*

4 Wheat. 415; *Brown* v. *Maryland,* 12 Wheat. 419; *Fairbank* v. *United States,* 181 U. S. 283; *United States* v. *Hooslef,* 237 U. S. 1; *McCall* v. *California,* 136 U. S. 104; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *People ex rel. Hatch* v. *Reardon,* 184 N. Y. 431; *Nicol* v. *Ames,* 173 U. S. 509.) The stock transfer tax is void as to export sales and sales in interstate commerce. (*Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Lyng* v. *Michigan,* 135 U. S. 161; *Kansas City Ry. Co.* v. *Kansas,* 240 U. S. 227; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506; *Carson Petroleum Co.* v. *Vial,* 279 U. S. 80; *Fisher's Blend Station, Inc.,* v. *State Tax Commission,* 297 U. S. 650; *Western Live Stock Co.* v. *Bureau of Revenue,* 303 U. S. 250; *Crew Levich Co.* v. *Pennsylvania,* 245 U. S. 292.) The export-import clause applies to goods shipped from one State to another. (The Federalist, No. 42, Madison, Jan. 22, 1788; *Almy* v. *California,* 24 How. 169; *Coe* v. *Errol,* 116 U. S. 517; *New York ex rel. Burke* v. *Wells,* 208 U. S. 14.)

*John J. Bennett, Jr., Attorney-General (Leon M. Layden, Henry Epstein* and *Jacob S. Honigsbaum* of counsel), for respondent. The tax did not violate the commerce clause of the Federal Constitution. (*Felt & Tarrant Mfg. Co.* v. *Gallagher,* 306 U. S. 62; *Hump Hairpin Co.* v. *Emmerson,* 258 U. S. 290; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167; *Pacific Tel. & Tel. Co.* v. *Gallagher,* 306 U. S. 182; *McGoldrick* v. *Berwind-White Coal Mining Co.,* 309 U. S. 33; *McGoldrick* v. *Felt & Tarrant Mfg. Co.,* 309 U. S. 70; *Field* v. *Barber Asphalt Paving Co.,* 194 U. S. 618; *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S. 21; *Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Adams Express Co.* v. *Ohio,* 165 U. S. 194; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226; *Hopkins* v. *United States,* 171 U. S. 578; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169.) Sections 270 and 270-a of the Tax Law (Cons. Laws, ch. 60) do not violate the Fourteenth Amendment to the United States Constitution. (*Vaughan* v. *State,* 272 N. Y. 102; *Hatch* v. *Reardon,* 204 U. S. 152.) The export-import clause of the Consti-

tution does not apply. (*Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 350; *New Mexico ex rel. McLean* v. *Denver & R. G. R. R. Co.,* 203 U. S. 38; *State* v. *Pinckney,* 10 Rich. Law Rep. [S. C.] 486; *Coe* v. *Errol,* 116 U. S. 517; *Pittsburgh & Southern Coal Co.* v. *Bates,* 156 U. S. 587; *Brown* v. *Houston,* 114 U. S. 622; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 520; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Woodruff* v. *Parham,* 8 Wall. 123; *Preston* v. *Finley,* 72 Fed. Rep. 850.)

FINCH, J. Appellants challenge the constitutionality of a tax statute. They have affixed the tax stamps as required and bring this action pursuant to section 280 of the Tax Law (Cons. Laws, ch. 60) to obtain a refund. The application was made in the first instance to the Tax Commission, which denied the claim, and thereafter to the Court of Claims. From a judgment of that court, dismissing the claim on the merits, appellants appeal directly to this court (Civ. Prac. Act, § 588, subd. 3), and have thus chosen to present for decision as the only question involved the validity under the Constitution of the United States of a statute which, as applied to the facts in the case at bar, imposes a tax upon an agreement for the sale of shares of stock which are to be sold and delivered across State lines.

The facts are as follows: Appellants are partners in an investment and securities business, with offices in New York city. As a result of negotiations conducted by telephone, telegraph and mail, appellants entered into contracts to sell securities to Kennedy & Co., and to Butcher and Sherred, both of Philadelphia, Pennsylvania, and to Babbage & Co. of Washington, D. C. The purchasers mailed confirmations to appellants, who mailed confirmations of the sales to the purchasers. These memoranda are indispensable incidents of such transactions. Appellants mailed to banks in Philadelphia and in Washington, D. C., sight drafts for collection with the securities attached, and the banks remitted the proceeds by mailing checks to appellants in New York city. Title to the stock involved did not pass until payment was received by appellants.

In regard to the sale to Babbage & Co., there is a finding that the shares in question were delivered to MacKubin, Logg & Company of New York on behalf of the purchaser. Thus, in regard to this transaction, the record contains two inconsistent findings, to wit, that appellants delivered the shares to the purchaser via the collection bank, and that the appellants delivered the shares to an agent of the purchaser in New York.

Throughout all the transactions, the several memoranda exchanged between sellers and buyers stated that each party acted as a principal in the transaction. The agreements to sell were made in New York city, and the shares of stock which were the subject of the agreements were located in New York city both prior to and after the making of such agreement, and up to the time they were shipped in interstate commerce.

Section 270 of the Tax Law provides for a tax at the rate of one and one-half cents per share sold for less than twenty dollars, and of two cents per share sold for more than twenty dollars, upon " all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares   *   *   * whether made upon or shown by the books of the   *   *   * corporation   *   *   *   or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer   *   *   *." The seller is required to buy tax stamps, affix them, and have them canceled. When the transaction is consummated by the transfer of a certificate of stock, the stamps must be affixed to the certificate itself; " and in cases of an agreement to sell, or where the sale is effected by delivery of the certificate assigned in blank, there shall be made and delivered by the seller to the buyer, a bill or memorandum of such sale to which the stamp   *   *   *   shall be affixed and cancelled."

Section 270-a imposes an additional emergency tax at the same rate, so that the total tax is now three cents per share sold for less than twenty dollars, and four cents per share sold for more than twenty dollars.

The statute as applied to the transactions in the case at bar is said to offend the Constitution of the United States, particularly the due process clause (Fourteenth Amendment), the import-export clause (Art. I, § 10, cl. 2), and the commerce clause (Art. I, § 8, cl. 3).

*Due process.* Appellants suggest objection to the statute on this score, but they submit no supporting argument. Indeed, the question has been previously considered and answered contrary to the contention of appellants. (*New York ex rel. Hatch* v. *Reardon*, 204 U. S. 152; *Vaughan* v. *State*, 272 N. Y. 102.)

*Import-export duties.* It is now well settled that the constitutional proscription that no State shall lay " any imposts or duties on imports or exports " applies only to foreign commerce and not to interstate commerce. (*Woodruff* v. *Parham*, 8 Wall. [U. S.] 123, 130; *Coe* v. *Errol*, 116 U. S. 517, 527; *New Mexico ex rel. McLean & Co.* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 38.) Since the activities of appellants do not involve foreign commerce, they are in no position to question the application of the statute to transactions in foreign, as distinguished from interstate commerce. (*New York ex rel. Hatch* v. *Reardon, supra.*)

*Interstate commerce.* Appellants contend that the grant to Congress of power to regulate interstate commerce operates even in the absence of action by Congress to forbid the imposition of a non-discriminatory State tax, upon an agreement made within the State with respect to goods which are within the State and prior to their shipment in interstate commerce. " The question, it should be observed, is not with respect to the extent of the power of Congress to regulate interstate commerce, but whether a particular exercise of State power in view of its nature and operation must be deemed to be in conflict with this paramount authority." (*Bacon* v. *Illinois*, 227 U. S. 504, 516; *Federal Compress & Warehouse Co.* v. *McLean*, 291 U. S. 17. Cf. *Santa Cruz Co.* v. *Labor Board*, 303 U. S. 453, 456.) It is said that the very existence of the power of Congress to regulate interstate commerce necessarily precludes State

regulation of events transpiring within the State when subsequent to such events interstate shipments are made by the taxpayer.

Cases concerned with the effect of the commerce clause upon State action are truly legion, and only a few in number will be adverted to here. One fundamental principle which is not now questioned is that State action is not necessarily unconstitutional merely because it has some effect on interstate commerce (*Baldwin* v. *Seelig, Inc.*, 294 U. S. 511, cas. cit. 525); and in regard to taxation, State levies are not necessarily invalid because they result in some increase in the cost of doing interstate business. (*Western Live Stock Co.* v. *Bureau of Revenue*, 303 U. S. 250, cas. cit. 254, 255.) No simple test is available. " It being once admitted, as of course it must be, that not every law that affects commerce among the states is a regulation of it in a constitutional sense, nice distinctions are to be expected * * *. It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction." (Per HOLMES, J., *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas*, 210 U. S. 217, 225, 227.) " This does not satisfy those who seek for mathematical or rigid formulas, but such formulas are not provided by the great concepts of the Constitution such as ' interstate commerce,' ' due process,' ' equal protection.' In maintaining the balance of constitutional grants and limitations, it is inevitable that we should define their applications in the gradual process of inclusion and exclusion." (Per HUGHES, Ch. J., *Santa Cruz Co.* v. *Labor Board, supra*, at p. 467.)

The validity of State regulation under the commerce clause is to be determined by the balancing of two considerations: that State government shall be able to derive revenue for its support, and that commerce among the States shall be unfettered by provincial impediments. Stated conversely, interstate commerce must bear its share of the tax burden along with intrastate commerce, but the States may not exact of interstate commerce a toll heavier than that which intrastate commerce is liable to pay. The

consequences of these principles have been variously stated. The States may not impose a " direct " tax or a tax on interstate commerce " as such;" interstate commerce may not be subjected to multiple burdens to which intrastate commerce is not exposed. But however expressed, the guiding principle which limits the power of the States to tax is that the several States of the Union may not discriminate against interstate commerce in favor of intrastate commerce.

It is a matter of historical record that the Founding Fathers were concerned lest State rivalries should lead to the stifling of trade carried on beyond the confines of any single State. But it was not thereby intended that commerce among the several States, when once protected from the dangers of local prejudice, should altogether escape its proportionate share of the cost of government. (*McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33; *Felt & Tarrant Mfg. Co.* v. *Gallagher*, 306 U. S. 62; *Southern Pacific Co.* v. *Gallagher*, 306 U. S. 167; *Henneford* v. *Silas Mason Co.*, 300 U. S. 577; *Western Live Stock Co.* v. *Bureau of Revenue, supra.*) In the *Berwind-White* case the courts sustained the sales tax imposed on the buyer although the goods previously had been transported interstate. The contract between the seller and the buyer was made in New York and the goods were delivered in New York. In answering the claim of immunity from taxation because interstate commerce had preceded the taxable event the court said in part: " As we have often pointed out, there is no distinction in this relationship between a tax on property, the sum of all the rights and powers incident to ownership, and the taxation of the exercise of some of its constituent elements. * * * Taxation of property or the exercise of a power over it immediately preceding its previously contemplated shipment interstate has been similarly sustained. (Cit.) For reasons already indicated all such taxes upon property or the exercise of the powers of ownership stand in no different relation to interstate commerce and have no different effect upon it than has the present sales tax upon goods whose shipment interstate into the taxing State was contemplated

when the contract was entered into." (309 U. S. at pp. 52, 55.) In the case at bar certain goods, to wit, shares of stock, were located in this State and were part of the common mass of property which undoubtedly was subject to taxation. The taxable event, to wit, the making of the agreement for the sale of the property, occurred in this State prior to the transportation of the goods in interstate commerce, and was an exercise of one of the incidents of ownership. In imposing a tax on the exercise of one of the incidents of ownership, no discrimination was practiced on interstate commerce. Appellants object to the taxation of a local event because it is followed by interstate commerce. But unless local events occurring *after* interstate commerce has ended are clothed with a greater sanctity than are possessed by local events *preceding* interstate commerce, such objection must fail. (*McGoldrick* v. *Berwind-White Coal Mining Co., supra.*) Indeed, it would appear that no such distinction has been drawn. (*Coe* v. *Errol, supra; Bacon* v. *Illinois, supra; Federal Compress & Warehouse Co.* v. *McLean, supra.*) The simple grant of power to the Congress to regulate interstate commerce would not seem of itself to lead to any distinction such as is contended for by appellants.

Appellants then argue that the decision in the *Berwind-White* case would permit the State of destination, to wit, Pennsylvania, likewise to impose a sales tax, and that cumulative burdens would thus be borne by interstate commerce. It should be noted that the plaint is not of a present condition, for the record is barren of any suggestion that such a tax has been imposed on the transactions in the case at bar. But assuming that the *Berwind-White* decision is authority for the proposition that the State of the buyer may impose a sales tax on the *buyer*, that does not render interstate commerce liable to greater taxation than that which may be levied upon intrastate commerce. In cases such as *Gwin, White & Prince, Inc.*, v. *Henneford* (305 U. S. 434) and *Adams Mfg. Co.* v. *Storen* (304 U. S. 307), the taxes there in question were held invalid because the taxable

448

event was equally within the jurisdiction of States other than the one of origin and the one of destination, and hence the same event could have been taxed in each State through which the shipment passed if the levy had been sustained. But in the case at bar it may be said truly, as was said in *McGoldrick* v. *Berwind-White*, " the present tax as applied to respondent is without the possibility of such consequences." (309 U. S. at p. 48.) In the circumstances of the case at bar, as has been said, the taxable event is the making in this State of a contract to sell goods which are in this State. This event is no more recurrent than the taxable event in *Berwind-White*, and hence the possibility of cumulative taxes is equally absent. If upon the facts before us the State of the buyer may place a tax on the *buyer*, then the situation is no different from the power of a State to levy taxes on the different incidents of intrastate transactions. That another State may choose to enact a different kind of tax does not deprive the tax in this State of its constitutionality. To illustrate, let us suppose that the facts are those presented in the record in the case at bar, and that the State of the seller imposes two sales taxes, one on the seller and one on the buyer, and that the State of the buyer imposes like levies. An intrastate transaction would be liable for two taxes in all, one paid by the seller and another by the buyer. There is no reason why the same kind of transaction, when carried on between two States, should not bear the same total burden; the State of the seller would be entitled to the tax due from the seller, and the corresponding situation would prevail in the State of the buyer. According to the argument of the appellants, the interstate transaction would obtain an advantage over intrastate commerce. In the guise of barring discrimination against interstate commerce, special privilege would be accorded to that commerce to the disadvantage of intrastate commerce. Such a result is not required by the provision that " The Congress shall have Power * * * to regulate Commerce * * * among the several States * * *." (U. S. Const. art. I, § 8.)

Appellants argue that the rulings of the Stock Transfer Bureau seek to enforce the tax upon transactions converse to those in the case at bar, so that the statute has the effect of applying, both to sales made within the State to extra-State buyers, and to sales by extra-State sellers to local buyers. The question of the application of the statute to such situations is not now before this court. The narrow question for decision in the case at bar is whether the commerce clause forbids the application of the statute in question to the facts presented by the record in the case at bar. The constitutionality of the statute, as applied to those in a class other than that in which appellants find themselves, does not aggrieve appellants, who may complain, when a statute is similar to that in the case at bar, only of such matters as concern them. This court may declare statutes unconstitutional only in so far as it is essential to do so in order properly to determine the relative rights of the litigants. (*Marbury* v. *Madison*, 1 Cranch [U. S.], 137; *New York ex rel. Hatch* v. *Reardon, supra.*)

The judgment should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). The statute provides for a tax upon sales and transfers of shares of stock. The claimants are engaged in an investment and securities business in the city of New York. In the course of their business, they agreed to sell shares of stock to two firms, one engaged in business in Philadelphia and the other in Washington, and, thereafter, mailed the securities to banks in Philadelphia and Washington, D. C., for delivery upon payment of sight drafts which were attached. The plaintiffs challenged the validity of the Tax Law of the State of New York (Cons. Laws, ch. 60) in so far as it purports to impose a tax upon the sale or transfer of the stock which the plaintiffs have sold and delivered to persons outside of the State of New York, on the ground that such a tax constitutes an unlawful burden on interstate commerce.

The sellers reside in New York and, unquestionably, the State would have power to tax their personal property here, including property which the plaintiffs intend to use

in interstate commerce, until the moment when such property becomes part of a movement in interstate commerce. The purchasers live in other jurisdictions and, unquestionably, such jurisdictions would have power to tax their property immediately after it was delivered in the course of interstate commerce to the purchasers. The Tax Law of New York State, which is challenged, does not, however, attempt to tax the property of the plaintiffs or any exercise of power over such property by them, except in connection with a sale in interstate commerce.

Every transaction in interstate commerce requires the performance of acts in two or more States. Here the contract was made by telephone, telegraph and mail, with the messages originating in one State and received in another State, and the contract of sale became effective only upon exchange of confirmation by the buyer outside of the State and the seller here. The shares of stock were mailed here, passed through other States to the cities where the purchasers did business. Payment was made there and transmitted to the sellers here. Authority of the State, if any, to tax the sale or transfer of the stock must rest upon the fact that the sellers lived here and the State had jurisdiction of the property before it entered into the stream of interstate commerce, or upon the fact that part of the transaction in interstate commerce occurred here.

If the State of New York had power to tax the sale or transfer of this property on such grounds, then it would seem clear that Pennsylvania and the District of Columbia would each have the right to tax the sale or transfer of such securities because the purchaser resides and the transfer is made there. But in such case " interstate commerce would thus be subjected to the risk of a double tax burden to which intrastate commerce is not exposed and which the commerce clause forbids." (*Adams Manufacturing Co.* v. *Storen*, 304 U. S. 307, 311, decided May 16, 1938; *Gwin, White & Prince, Inc.*, v. *Henneford*, 305 U. S. 434.) It is said that there is no proof here that, in fact, Pennsylvania or the District of Columbia do impose any tax upon the transfer of the stock

outside of this State or that, in this case, the sales have, in fact, been subjected to a tax burden greater than similar sales where purchaser and seller both live in the State of New York and transfer is made there. It is established by a long line of cases, referred to and approved in the two cases cited above, that interstate commerce may not be subjected to the *risk* of double taxation — whether, in fact, two or more States have joined in imposing multiple taxes is immaterial if the risk of multiple taxation exists. So, in *Adams Manufacturing Co.* v. *Storen* (*supra*) the Supreme Court of the United States declared invalid a State tax on gross income derived by a manufacturer from sales in interstate commerce, saying that the tax " is of such a character that if lawful it may in substance be laid to the fullest extent by states in which the goods are sold as well as those in which they are manufactured " (p. 311). I can find no distinction in principle between the tax there declared invalid and the tax which is here challenged. To sustain this tax we must reject the authority of what was so recently said and decided by the Supreme Court of the United States.

The State, however, relies for authority to a great extent upon the later case of *McGoldrick* v. *Berwind-White Coal Mining Co.* (309 U. S. 33). It may hardly be supposed that the majority of the court intended in that case to destroy the force of its previous decisions without even mentioning the decisions which it intended to overrule or weaken. In the last case the opinion by Mr. Justice Stone indicates clearly the factors which induced the court to sustain the tax in that case, though it was a tax on a sale in interstate commerce.

After analyzing the tax there challenged, Mr. Justice Stone pointed out: " The ultimate burden of the tax, both in form and in substance, is thus laid upon the *buyer*, for *consumption*, of *tangible personal property*, and measured by the sales price. Only in event that the seller fails to pay over to the city the tax collected or to charge and collect it as the statute requires, is the burden cast on him. It is conditioned upon events occurring within the state, either transfer of title or possession of the purchased property,

or an agreement within the state, ' consummated' there * * *" (p. 43).

Then he points out that

"Certain types of tax may, if permitted at all, so readily be made the instrument of impeding or destroying interstate commerce as plainly to call for their condemnation as forbidden regulations. Such are the taxes already noted which are aimed at or discriminate against the commerce or impose a levy for the privilege of doing it, or tax interstate transportation or communication or their gross earnings, or levy an exaction on merchandise in the course of its interstate journey. Each imposes a burden which intra-state commerce does not bear, and merely because interstate commerce is being done places it at a disadvantage in comparison with intrastate business or property in circumstances such that if the asserted power to tax were sustained, the states would be left free to exert it to the detriment of the national commerce.

"The present tax as applied to respondent is without the possibility of such consequences. Equality is its theme. Cf. *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 583. It does not aim at or discriminate against interstate commerce. It is laid upon every purchaser, within the state, of *goods for consumption*, regardless of whether they have been transported in interstate commerce. Its only relation to the commerce arises from the fact that immediately preceding transfer of possession to the purchaser within the state, which is the taxable event regardless of the time and place of passing title, the merchandise has been transported in interstate commerce and brought to its journey's end. *Such a tax has no different effect upon interstate commerce than a tax on the ' use '* of property which has just been moved in interstate commerce sustained in *Monamotor Oil Co.* v. *Johnson*, 292 U. S. 86; *Henneford* v. *Silas Mason Co., supra; Felt & Tarrant Mfg. Co.* v. *Gallagher*, 306 U. S. 62; *Southern Pacific Co.* v. *Gallagher*, 306 U. S. 167, or the tax on storage or withdrawal for use by the consignee of gasoline, similarly sustained in *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472;

*Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249; *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, *or the familiar property tax on goods by the state of destination at the conclusion of their interstate journey. Brown* v. *Houston, supra; American Steel & Wire Co.* v. *Speed,* 192 U. S. 500 " (pp. 48, 49). (Italics throughout are ours.)

Here the tax is imposed upon the seller and not the buyer and it has no possible analogy to a " use " tax or a property tax on goods at their destination. If this tax is sustained, then similar sales in interstate commerce may be subjected to the risk of a burden of multiple taxation which might impede or destroy such commerce, and similar taxes have been declared a violation of the Constitution whenever challenged. It is said that the State of New York would have power to require both buyer and seller to pay a tax upon a sale made in intrastate commerce and that sales in interstate commerce may properly be made subject to the same risk that where buyer and seller live in different States, each may be required to pay a tax upon the sale. Perhaps some inscrutable reason might induce a State to require both buyer and seller to pay a sales tax on intrastate commerce and only one to pay a sales tax on interstate commerce. We do not now pass upon the validity of such a tax. Here the State has attempted to subject a sale in interstate commerce to the same single tax which must be paid on other sales and other States would have power, at least as good, to impose a similar sales tax upon the same sale.

The judgment should be reversed, with costs in all courts, and judgment directed for the claimants for the taxes they have paid, with interest.

RIPPEY, SEARS and LEWIS, JJ., concur with FINCH, J.; LEHMAN, Ch. J., dissents in opinion, in which LOUGHRAN and CONWAY, JJ., concur.

Judgment affirmed.