HEWIT, DIRECTOR OF GROSS INCOME TAX DIVISION, DEPARTMENT OF TREASURY OF INDIANA *v.* FREEMAN.

[No. 27,881. Filed October 25, 1943. Rehearing denied November 22, 1943.]

676

*James A. Emmert,* Attorney General, *David I. Day, Jr.,* and *Byron B. Emswiller,* Deputy Attorneys General, for appellant.

*Gath P. Freeman,* of Richmond, for appellee.

SHAKE, J.—During 1940 the appellee, who was domiciled in Indiana, paid, under protest, Indiana Gross Income taxes calculated on proceeds derived from the sale of corporate stocks and bonds of foreign corporations. Subsequently, the appellee brought this action and recovered the amount of taxes so paid. The State has appealed from the overruling of its motion for a

new trial, which asserted that the decision was contrary to law.

The evidence is not in dispute and the nature of the transactions here involved are disclosed by the following stipulation:

"5. The sales of the above described corporate stocks and bonds were twenty separate sales made from time to time in the year 1940 for the respective sales prices as above set out and were made in the following manner: The trustee placed orders to sell from time to time of the several stocks and bonds above described and set out, with one Sherman J. Brown, a broker of Richmond, Indiana, who maintained and conducted a grain brokerage and a stock and bond brokerage business at and in said City of Richmond, Indiana, operating and maintaining at and in the office of said brokerage business a blackboard and telegraph wire service over private lines leased from the American Telephone and Telegraph Company and telegraph operators and clerks who received by telegraph over said wire service the market transactions as the same occurred daily on the New York Stock Exchange and the Chicago Stock Exchange and who posted the same upon said blackboard as received through such telegraph service, all in the manner as usually and customarily done and conducted in such brokerage offices. Said telegraph wire service was connected with the brokerage office of Fenner and Beane, brokers at and in the City of New York in the State of New York, who furnished the markets and market information of sales and transactions on the New York Stock Exchange as the same occurred over said telegraph wire service to said brokerage office of said Sherman J. Brown in said City of Richmond, Indiana, said Fenner and Beane being members of said New York Stock Exchange; said Sherman J. Brown was not and is not a member of said New York Stock Exchange and could not himself make sales on said Exchange. Upon and at the time of placing said sales orders by the trustee with said Sherman J. Brown, as such broker in said City of Richmond, Indiana, the trustee

knew and intended that the same would be immediately communicated by said telegraph wire service to the office of Fenner and Beane at and in said City of New York, New York, and by them placed and offered on said New York Stock Exchange. Upon receiving such separate sales orders from time to time Fenner and Beane offered the stocks or bonds according to the sales orders of the trustee for sale on said New York Stock Exchange at the prices specified by the trustee in his separate sales orders, and upon acceptance of any sales offer on said New York - Stock Exchange by some other broker representing a purchaser, Fenner and Beane notified said Sherman J. Brown at Richmond, Indiana over said telegraph wire service of the sale, and thereupon said Sherman J. Brown notified the trustee of the sale and to deliver the stock certificates or bonds so sold. Thereupon the trustee delivered to said Sherman J. Brown in Richmond, Indiana the stock certificates or bonds so sold, who mailed the same by United States mail to the office of Fenner and Beane at and in the City of New York. Upon receipt by Fenner and Beane in New York City of the stock certificates or bonds so sold, they delivered the same in said City of New York to the broker representing the purchaser of the stocks or bonds so sold, and thereupon the broker representing the purchaser paid the purchase price to Fenner and Beane at and in the City of New York, upon delivery of the securities, and thereupon Fenner and Beane transmitted or remitted the proceeds of such sale by check, less their commission, cost of revenue stamps, postage and any other expenses of sale, by United States Mail to the said Sherman J. Brown at Richmond, Indiana, who delivered the amount thereof to the trustee less deduction of his broker's commission. Neither said Sherman J. Brown nor said Fenner and Beane acted as principal in any of said sales and neither of them took or had any title in or to any of such corporate stocks or the certificates therefor or any of said bonds, but both said Sherman J. Brown and said Fenner and Beane acted solely and only as brokers for said trustee upon and for commissions, the commissions of Fenner and Beane being

authorized and approved by said New York Stock Exchange according to the rules and regulations thereof, and neither of them had any interest in any of said sales or property except as a broker to procure sales thereon or for commissions. All of said sales were handled in the usual and customary way of sales of intangibles through said New York Stock Exchange, and the court may take judicial notice of the manner and method of sales of securities on or through said New York Stock Exchange and the rules and regulations and laws governing sales of securities on or through said New York Stock Exchange. All persons purchasing the intangibles set out above were non-residents of the State of Indiana; however, the plaintiff at the time of sale did not know, nor was he acquainted with the ultimate purchasers of the intangibles, nor did the trustee make it a requirement of the sale that the bonds and stocks be sold only to persons, firms or corporations resident in states other than Indiana."

The question presented by this appeal is whether the appellee is taxable on the proceeds of the above described sales under the Indiana Gross Income Tax Act of 1933. § 64-2601 et seq., Burns' 1933, § 15981 et seq., Baldwin's 1934. Section 6 of that act exempts "so much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, but only to the extent to which the State of Indiana is prohibited from taxing such gross income by the Constitution of the United States."

Much of the confusion relating to the matter before us arises out of the misconception that the federal Constitution prohibits the imposition of any state tax upon subjects of interstate commerce. This assumption is untrue. The immunity which interstate commerce enjoys is not a cloak to insulate it against being required to bear its proportionate share

of expenses of local government; but rather a protection against such commerce being subjected to the onerous burdens of multiple exactions. "The validity of State regulation under the commerce clause is to be determined by the balancing of two considerations: that State government shall be able to derive revenue for its support, and that commerce among the States shall be unfettered by provincial impediments. Stated conversely, interstate commerce must bear its share of the tax burden along with intrastate commerce, but the states may not exact of interstate commerce a toll heavier than that which intrastate commerce is liable to pay." *O'Kane* v. *State* (1940), 283 N. Y. 439, 28 N. E. (2d) 905.

Recognizing that tangible property is capable of acquiring a situs of its own, which may be different from that of the domicile of its owner, the Supreme Court of the United States has held that as to transactions relating to such property a tax of the character here involved may be levied by the state of the buyer, but not by that of the seller. By adhering to this formula the possibility of burdening transactions in interstate commerce with multiple taxes is avoided and, at the same time, the right of the states to impose sustaining taxes is protected. *Dept. of the Treasury* v. *Allied Mills, Inc.* (1942), 220 Ind. 340, 42 N. E. (2d) 34, affirmed by the United States Supreme Court February 15, 1943, 318 U. S. 740, 801, 87 L. Ed. 1120, 1165, 63 Sup. Ct. 666. *J. D. Adams Mfg. Co.* v. *Storen* (1938), 58 Sup. Ct. 913, 304 U. S. 307.

The situs of intangible property, such as stocks and bonds, is not of a transitory character. As to assets of this type there has been applied the rule of "mobilia sequuntur personam"—the situs of the property is the domicile of the owner. This doc-

trine maintains, generally, in the absence of a statute or of peculiar facts forcing a different conclusion. Cooley, Taxation (4th Ed.) § 440. *Union Refrigerator Transit Co.* v. *Kentucky* (1905), 199 U. S. 194, 50 L. Ed. 150, 26 Sup. Ct. 36. *Buck* v. *Beach* (1906), 206 U. S. 392, 51 L. Ed. 1106, 27 Sup. Ct. 712, 11 Ann. Cas. 732. *Blodgett, Tax Commissioner of the State of Conn.* v. *Silberman* (1928), 277 U. S. 1, 72 L. Ed. 749, 48 Sup. Ct. 410. *Croop* v. *Walton* (1927), 199 Ind. 262, 157 N. E. 275, 53 A. L. R. 1386. No such statute has been called to our attention and no such facts are disclosed by the stipulation. It must, therefore, be concluded that the situs of the stocks and bonds sold by the appellee was in this State, where he was domiciled. For a discussion of the circumstances that may establish for intangible property a situs different from the domicile of the owner see *Miami Coal Co.* v. *Fox, Treas.* (1932), 203 Ind. 99, 176 N. E. 11, 79 A. L. R. 333.

The appellee concedes that the law is as stated above, but he relies upon the proposition that the sale of said securities, in the manner described by the stipulation, constituted transactions in interstate commerce. He leans upon the circumstances that the offers of sale, the acceptance of the offers, the delivery of the certificates evidencing ownership, and the remittance of the proceeds by the broker in New York to him in Richmond, Indiana, were effectuated by the facilities of interstate commerce. Having admitted the major premise, the appellee's contention must fail. If the situs of his securities was at the place of his Indiana domicile, it necessarily remained there until ownership passed to the purchasers. The activities of the appellee's agents in making the sales did not change the situs of his securities any more than they affected his domicile. That said activities incidentally involved in-

terstate commerce is immaterial. *Holland Furnace Co.* v. *Dept. of Treasury* (1943), (C. C. A.), 133 F. (2d) 212.

The stipulated facts disclose a sufficient basis for imposing upon the appellee a tax measured by the gross income derived from the sales therein described. Whether the appellee's incidental activities in another jurisdiction might subject him to additional tax liabilities there is not before us; but even that contingency would not relieve him from the obligation he now seeks to avoid. *Curry* v. *McCanless* (1939), 307 U. S. 357, 83 L. Ed. 1339, 59 Sup. Ct. 900, 123 A. L. R. 162. *O'Kane* v. *State, supra.*

The judgment is reversed with directions to sustain the motion for a new trial and to enter judgment for appellant.

NOTE.—Reported in 51 N. E. (2d) 6.