BOSTON STOCK EXCHANGE et al., Respondents, *v.* STATE TAX COMMISSION et al., Appellants.

First Department, July 9, 1974.

*Robert W. Bush* of counsel (*Ruth Kessler Toch* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*Roger Pascal* of counsel (*Milton H. Cohen* and *Allan Horwich* with him on the brief; *Schiff Hardin & Waite* and *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondents.

*Samuel J. Warms* of counsel (*Robert J. Metzler, II,* with him on the brief; *Adrian P. Burke, Corporation Counsel*), for City of New York, *amicus curiae.*

MACKEN, J.  By this action, plaintiffs, stock exchanges located in States other than New York, seek a declaration that section 270-a of the Tax Law, adopted in 1968 and effective July 1, 1969, amending the then existing stock transfer tax law (Tax Law, § 270) is constitutionally invalid, and defendants appeal from an order denying their motion to dismiss the complaint.

Since 1905 this State has imposed a tax "on all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares or certificates of stock". Prior to July 1, 1969 all such transactions were taxed at a rate based on the sale price per share of the stock and neither the place where the sale was made nor the residence of the seller had any bearing on the rate of tax. None of the States or cities in which the plaintiffs are located had any such tax and, as found by the Legislature (L. 1968, ch. 827), "The securities industry, and particularly the stock exchanges located within the state have contributed importantly to the economy of the state and its recognition as the financial center of the world. The growth of exchanges in other regions of the country and the diversion of business to those exchanges of individuals who are non-residents of the state of New York, requires recognition that the tax on transfers of stock imposed by article twelve of the tax law, is an important contributing element to the diversion of sales to other areas to the detriment of the economy of the state. Furthermore, in the case of transactions involving large blocks of stock, recognition must be given to the ease of completion of such sales outside the state of New York without the payment of any tax. In order to encourage the effecting by nonresidents of the state of New York of their sales within the state of New York and the retention within the state of New York of sales involving large blocks of stock, a separate classification of the tax on sales by nonresidents of the state of New York and a maximum tax for certain large block sales are desirable."

Accordingly, the 1969 amendment provided that in the case of sales made within this State by a nonresident, the rate of

tax was reduced by graduated annual steps to 50% on July 1, 1973 and thereafter, and further provided for a maximum tax to be imposed in the case of any sales made within the State relating to shares of the same class and issued by the same issuer, the said maximum by annual graduated steps being reduced to $350 on and after July 1, 1973.

As alleged in the complaint "numerous securities which are bought and sold in the United States are delivered in the State of New York or are transferred * * * by banks and by other transfer agents located within the State of New York," including many securities regularly traded on plaintiff exchanges. A large portion of the taxed securities traded on plaintiff exchanges is also traded on exchanges located in New York and plaintiffs further allege "The legislative purpose and natural effect of the 1969 Amendments has been and will continue increasingly to be the diversion of such transactions from plaintiff exchanges to stock exchanges located within the State of New York and the diversion, in general, of securities business from those engaged in that business outside the State of New York to those engaged in the securities business within the State of New York" and that the amendment is violative of (1) clause 3 of section 8 of article I (the Commerce Clause), (2) section 2 of article IV (the Privileges and Immunities Clause), and (3) section 1 of the Fourteenth Amendment (the Equal Protection Clause), of the United States Constitution.

Before answering, defendants moved to dismiss on grounds (1) that the court lacks jurisdiction of the subject matter of the action; (2) that plaintiffs do not have legal capacity to sue since they are not subject to the transfer tax and are not legally aggrieved by its provisions; and (3) that the complaint fails to state a cause of action.

We agree with Special Term that our courts have jurisdiction to decide cases involving rights of litigants under the Federal Constitution unless deprived of that power by the Federal Constitution or statute (1 Carmody-Wait 2d, New York Practice, Courts and Their Jurisdiction, § 2:92) and that plaintiffs have legal standing to maintain the action since the stated legislative findings (L. 1968, ch. 827) and the Governor's memorandum of approval (N. Y. Legis. Annual, 1968, p. 482) make it clear that indeed a purpose of the 1969 amendment was to discourage diversion of stock transactions from New York exchanges and to encourage transactions of securities in New York. Plaintiffs may therefore claim to be potentially injured

by the amendment (*Data Processing Serv.* v. *Camp*, 397 U. S. 150, 152–154).

We fail to find, however, any constitutional infirmity in the statute here attacked.

In adopting the statute, the basic underlying motivation of the Legislature was not to favor New York stock exchanges over out-of-State exchanges but to fulfill its duty to enact legislation providing vehicles of taxation sufficient to permit the State and its subdivisions to raise the funds required to meet the ever increasing needs of the People of the State for governmental aid and services. The State-wide proceeds of the stock transfer tax are appropriated to the City of New York for the support of its local government (State Finance Law, § 92-b), and it appears from the record that such income for the 1968 city fiscal year was estimated at $229,000,000. As may well be inferred from the record, the diversion of business from the New York Stock Exchange to out-of-State exchanges located in cities and States having no transfer tax had caused the New York exchange to consider leaving the State, and it is apparent that such a move would render New York City and the State a severe financial blow including, in addition to the transfer tax revenue, the loss of thousands of jobs, hundreds of millions in payrolls and many millions in real estate and business taxes. In such event the already tax-burdened State would be obliged to come to the aid of the city.

That the taxing power may be used to promote the economy of the taxing unit by favoring nonresidents over residents is clear. *Allied Stores of Ohio* v. *Bowers* (358 U. S. 522) involved an Ohio statute exempting from ad valorem taxation " merchandise or agricultural products belonging to a nonresident * * * if held in a storage warehouse for storage only ". In upholding the statute against a claim that it violated the equal protection provision of the Fourteenth Amendment the court said (pp. 528–529) : " But it is obvious that it may reasonably have been the purpose and policy of the State Legislature, in adopting the proviso, to encourage the construction or leasing and operation of warehouses in Ohio by nonresidents with the attendant benefits to the State's economy, or to stimulate the market for merchandise and agricultural products produced in Ohio by enabling nonresidents to purchase and hold them in the State for storage only, free from taxes, in anticipation of future needs."

In *Spatt* v. *City of New York* (13 N Y 2d 618, app. dsmd. for want of substantial Federal question 375 U. S. 394), a compen-

sating use tax on the sale of an automobile outside of the city to a resident of the city computed upon the total selling price of an automobile without deduction of any trade-in allowance as contrasted with the sales tax on a car purchased by a resident within the city computed on the net receipts of the sale after deducting a trade-in allowance, was held constitutional not only " by reason of the greater cost of enforcing the compensating use tax " but also " the greater likelihood of resale of the used car within the City of New York ". While in *Spatt* the purchase was made within the State the use tax applies also to those made outside of the State. (*Matter of Atlantic Gulf & Pacific Co.* v. *Gerosa,* 16 N Y 2d 1.) It is to be noted that in the latter case a contention that the tax is an unconstitutional burden on interstate commerce was rejected.

In *Madden* v. *Kentucky* (309 U. S. 83) an ad valorem tax on citizens of Kentucky on deposits in banks outside of the State at a rate five times that on deposits in banks located in the State was upheld. Although deposits in out-of-State banks by residents of Kentucky would obviously be thereby discouraged, it was found that the ease of collection warranted the distinction, the court saying (p. 93): " In the states, there reposes the sovereignty to manage their own affairs except only as the requirements of the Constitution otherwise provide. Within these constitutional limits the power of the state over taxation is plenary. An interpretation of the privileges and immunities clause which restricts the power of the states to manage their own fiscal affairs is a matter of gravest concern to them. It is only the emphatic requirements of the Constitution which properly may lead the federal courts to such a conclusion."

Transactions made in New York are less susceptible to tax evasion than those made outside as evidenced by the legislative finding that " recognition must be given to the ease of completion of such sales outside the State of New York without the payment of any tax ". New York may and has provided criminal sanctions on members of exchanges and security dealers for failure to comply with the transfer tax statutes, a remedy not available against nonresident exchanges and dealers. (Tax Law, §§ 270-a, 272.)

As was said in *Wisconsin* v. *Penney Co.* (311 U. S. 435, 445): " At best, the responsibility of devising just and productive sources of revenue challenges the wit of legislators. Nothing can be less helpful than for courts to go beyond the extremely limited restrictions that the Constitution places upon the states and to inject themselves in a merely negative way into the

delicate processes of fiscal policy-making. We must be on guard against imprisoning the taxing power of the states within formulas that are not compelled by the Constitution but merely represent judicial generalizations exceeding the concrete circumstances which they profess to summarize." (See, also, *Shapiro* v. *City of New York*, 32 N Y 2d 96, and *Lehnhausen* v. *Lake Shore Auto Parts Co.*, 410 U. S. 356.)

The order appealed from should be modified on the law and defendants' motion to dismiss the complaint granted to the extent of directing that a judgment be entered declaring that the provisions added to the Tax Law by chapter 827 of the Laws of 1968 are valid and constitutional, with costs and disbursements to appellants.

NUNEZ, J. P., KUPFERMAN, STEUER and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County entered on December 20, 1973, unanimously modified, on the law, and defendants' motion to dismiss the complaint granted to the extent of directing that a judgment be entered declaring that the provisions added to the Tax Law by chapter 827 of the Laws of 1968 are valid and constitutional. Appellants shall recover of respondents $60 costs and disbursements of this appeal.