Wachtler, J.
Since the turn of the century this State has levied a stock transfer tax (Tax Law, § 270). Recently the law was amended to reduce the tax on sales by nonresidents and to fix a maximum tax on all bulk sales within the State (Tax Law, § 270-a). The appellants, all of whom are stock exchanges located outside New York, seek a judgment declaring section 270-a unconstitutional on the grounds that it denies them equal protection of the laws, and discriminates against interstate commerce in violation of the commerce clause (US Const art I, § 8).[1]
*539 At Special Term the defendant tax commission unsuccessfully argued that the State courts lacked subject matter jurisdiction, that the appellants lacked standing and that the complaint failed to state a cause of action. The Appellate Division modified, agreeing that the courts had subject matter jurisdiction and that the appellants had the requisite standing to raise the issues but found that the statute did not violate the Constitution as alleged. Accordingly they dismissed the complaint on the merits (45 AD2d 365). The order of the Appellate Division should be affirmed.
Section 270 of the Tax Law imposes a tax "on all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares or certificates of stock”. The tax depends on the value of the stock, the maximum tax being 5 cents per share. When the sale is made within the State, the tax may be levied on any of these events, but no more than one of them (20 NYCRR 440.2). When the sale and all the accompanying negotiations occur outside the State — as on one of the appellants’ exchanges — no tax is due unless the stock is transferred in New York by a local transfer agent or upon the corporate books (see, e.g., Matter of Monarch Life Ins. Co. v State Tax Comm., 32 NY2d 850).
The constitutionality of this statute, originally enacted in 1905, has been sustained on several occasions against claims that it violated due process, equal protection (Hatch v Reardon, 204 US 152) and the commerce clause (O’Kane v State of New York, 283 NY 439; cf. Hatch v Reardon, supra). It is now well settled that the commerce clause does not prohibit the States from levying a tax on the transfer of property within the State (Harvester Co. v Department of Treasury, 322 US 340, 348; cf. Freeman v Hewit, 329 US 249, 258). Thus far the parties are agreed — the basic tax is constitutionally valid.
In 1966 complaints reached the Legislature that the transfer tax was driving business from the State. Specifically the New York exchanges complained that although brokers in other States charged the same commissions, transactions on the New York exchanges were placed at a disadvantage because none of the States in which the competing exchanges were located imposed a tax on stock sales or transfers. After *540 extensive investigation the Legislature found that "the tax on transfers * * * is an important contributing element in the diversion of sales to other areas to the detriment of the economy of the state. Furthermore, in the case of transactions involving large blocks of stock, recognition must be given to the ease of completion of such sales outside the state of New York without the payment of any tax. In order to encourage the effecting by nonresidents of the state of New York of their sales within the state of New York and the retention within the state of New York of sales involving large blocks of stock, a separate classification of the tax on sales by nonresidents of the state of New York and a maximum tax for certain large block sales are desirable” (L 1968, ch 827). Accordingly the Legislature amended the tax law, adding section 270-a, which reduces the tax by 50% when a nonresident sells stock within the State. And when any shareholder, resident or nonresident, sells a large block of stock within the State, the tax due is limited to a maximum of $350.[2]
If section 270-a is invalidated, the prior tax scheme would again become effective (L 1968, ch 827, § 11) and the appellants would be restored to their position of economic superiority.
First we consider the appellants’ argument that the statute violates the equal protection clause "because it establishes an arbitrary classification dependent upon the place of sale.” The equal protection clause is often invoked in support of a claim that a State taxing scheme is arbitrary. This is a familiar argument and the general principles are well settled.
It has been repeatedly held that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification” (Madden v Kentucky, 309 US 83, 88) and that the equal protection "clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation” (Allied Stores of Ohio v Bowers, 358 US 522, 526, 527). To succeed on the equal protection argument, the appellants must not only overcome the presumption of constitutionality which attaches to every statute (Madden v Kentucky, 309 US 83, supra) but must also establish that there is no "conceivable state of facts *541 which would support” the classification (Carmichael v Southern Coal Co., 301 US 495, 509; Lawrence v State Tax Comm., 286 US 276; Lehnhausen v Lake Shore Auto Parts Co., 410 US 356). The burden is on the one challenging the statute "to negative every conceivable basis which might support it” (Madden v Kentucky, supra, at p 88).
Initially we note, as did the Appellate Division, that the place of sale is not always the determining factor under the statute in question. If a small sale is involved the full tax must be paid unless the seller is a nonresident. Thus the statute also distinguishes between residents and nonresidents in favor of the latter. The avowed purpose, as the legislative history indicates, was to encourage nonresidents to sell on the New York exchanges. Similar legislation has been consistently upheld "and [it] appears to be entirely settled that a statute which encourages the location within the State of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment” (Allied Stores of Ohio v Bowers, 358 US 522, 528).
The Appellate Division also found that the distinction between in-State and out-of-State sales could be justified on the ground that "[transactions made in New York are less susceptible to tax evasion than those made outside” (p 369). They found that Madden v Kentucky (supra) supported this conclusion and we agree. In that case the State imposed an ad valorem tax of 10 cents per $100 on deposits in local banks, but taxed deposits in out-of-State banks at 50 cents per $100. Although the amount of tax was based on an out-of-State event, the court found that the classification was not arbitrary within the meaning of the equal protection clause since "The treatment accorded the two kinds of deposits may have resulted from the differences in the difficulties and expenses of tax collection” (Madden, 309 US 83, 90, supra).
Here, of course, the Legislature noted that tax evasion was one of the factors which prompted the enactment of section 270-a. But even if their motives had been more subtly stated, or completely unstated, the fact remains that this is a conceivable basis for the distinction. The Legislature, of course, is not required to "record a complete catalogue of the considerations which move its members to enact laws” (Carmichael, 301 US 495, 510, supra; see, also, Lehnhausen, 410 US 356, supra).
Finally the appellants argue that the distinction between *542 sales made within the State and sales completed elsewhere discriminates against interstate commerce. The commerce clause, of course, imposes additional limitations on the States’ taxing powers and "restrictions inimical to the commerce clause should not be approved simply because they facilitate in some measure enforcement of a valid tax” (Toomer v Witsell, 334 US 385, 406). The question in other words is no longer whether the distinction can be justified by "any conceivable state of facts which could support it” (Carmichael, supra, at p 509). "The guiding principle which limits the power of the States to tax is that the several States of the Union may not discriminate against interstate commerce in favor of intrastate commerce.” (O’Kane v State of New York, 283 NY. 439, 446, supra; see, also, Robbins v Shelby County Taxing Dist., 120 US 489; Welton v Missouri, 91 US 275; Memphis Steam Laundry v Stone, 342 US 389; Nippert v Richmond, 327 US 416; Best & Co. v Maxwell, 311 US 454; Halliburton Oil Well Co. v Reily, 373 US 64.)
Here, as indicated, the Legislature found that the tax as originally enacted had the reverse effect in that it conferred an economic advantage on exchanges located outside the State. The appellants do not dispute this. To neutralize this advantage, the Legislature enacted section 270-a and it seems clear that they had the power to do so. A use tax is a familiar example of this type of compensatory legislation and it is well settled that it does not offend the commerce clause (see, e.g., Miller Bros. Co. v Maryland, 347 US 340, 343; cf. Alaska v Arctic Maid, 366 US 199). Thus the stated legislative goal is a valid one.
Although helpful, this is not necessarily controlling for the determinative question in each case is "whether the statute under attack * * * will in its practical operation work discrimination against interstate commerce” (Best & Co. v Maxwell, 311 US 454, 456, supra).
The statute should have no practical effect whatsoever on sales by shareholders, both residents and nonresidents, involving stocks which do not have to be transferred in New York. If they sell on a New York exchange, of course they can claim the benefit of section 270-a. But if they sell on one of the appellants’ exchanges, they would pay no tax at all. Here the stock transfer law still works to the appellants’ economic advantage.
The sale of New York securities poses a different problem. *543 Then the transfer tax must be paid and the amount due depends on whether the sale is made in New York or elsewhere. In the case of New York residents it is more than likely (cf. Nippert v Richmond, 327 US 416) that the sale would be made on a New York exchange in any event, so that section 270-a should have little or no "practical” effect on such transactions.
The . appellants’ major argument then is that section 270-a discriminates against interstate commerce by encouraging nonresidents to sell New York securities on New York exchanges. This assumes that such sales would be intrastate so that the practical effect of the statute would be to "discriminate against interstate commerce in favor of intrastate commerce” (O’Kane, 283 NY 439, 446, supra).
The sale of intangibles is, of course, commerce within the meaning of the commerce clause (Freeman v Hewit, 329 US 249). And we can assume that sales of New York stocks by a nonresident on an out-of-State exchange would nevertheless involve interstate commerce because the securities must ultimately be transferred in New York (but see Hatch v Reardon, 204 US 152, supra). But we cannot assume, as the appellants do, that if the nonresident chooses to make the sale in New York — in order to claim the exemption provided by the statute —the transaction would lose its interstate character.
Typical of this latter type of transaction is one in which a resident of one of the areas in which the appellants operate gives his New York broker, or a New York correspondent of a local broker, an order to sell. When, in such a case, the New York broker executes the order, the customer will normally send his stock certificate to the New York broker to fulfill his agreement to sell. Such a sale is not an intrastate transaction. On the contrary in Freeman v Hewit (329 US 249, 259, supra) the Supreme Court considered an identical transaction and concluded "Of course this is an interstate sale”. In other words the trouble with the appellants’ argument is that a sale by a nonresident on a New York exchange —the type of transaction the law allegedly encourages — is still interstate commerce. Nor are we persuaded by appellants’ argument that the decision in Halliburton Oil Well Co. v Reily (373 US 64, supra) compels a different result since in that case this precise point was neither argued nor decided.
The order of the Appellate Division should be affirmed.
*544 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed, with costs.

. In the lower courts appellants also argued that the statute violated the privileges *539 and immunities clause (US Const art IV, § 2), but that contention has been abandoned on this appeal.

. These are the rates which are presently applicable. When section 270-a originally went into effect on July 1, 1969, it provided for higher rates — 95% for nonresidents, and a maximum tax of $2,500. This was gradually reduced to the current rates which became effective July 1, 1978.